THOMAS E. HAMILTON, INDIVIDUALLY AND ON BEHALF OF ELIZABETH A. HAMILTON ET AL., MINOR CHILDREN, APPELLANT, V. SHARON M. FOSTER, APPELLEE.

620 N.W.2d 103

Filed December 15, 2000.   No. S-99-1349.

888

Lisa C. Lewis for appellant.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Thomas E. Hamilton brought this action against his former girl friend, Sharon M. Foster, requesting that the court award sole custody of Hamilton's three granddaughters to Hamilton and order Foster to pay child support. Foster demurred to Hamilton's petition for failure to state a cause of action. The district court sustained the demurrer and dismissed the action. Hamilton appealed, and we moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

Hamilton's petition alleges, inter alia, the following: For 14 years, Hamilton and Foster lived together and held themselves out to be husband and wife, although the two were never married. For approximately 10 years, Hamilton's three granddaughters resided with Hamilton and Foster.

On May 21, 1993, the district court for Denver, Colorado, entered an order awarding "permanent custody" of the three children to Hamilton and Foster. The order provided that the children's parents, Wendy Rettig and Stephen Rettig, were not to have visitation with the children. The court also ordered Wendy Rettig to pay $25 per month and Stephen Rettig to pay $100 per month in child support. The matter was then reviewed on January 18, 1994, resulting in the child support obligation of Stephen Rettig to be increased to $200 per month. In addition, the Rettigs were not to have visitation with the children unless authorized by the children's therapist. No further review of the case was scheduled. Copies of both the May 21, 1993, and January 18, 1994, orders from the Colorado court were incorporated in Hamilton's petition.

Hamilton further alleged that the Rettigs have not had any contact with the children since January 1994. The Rettigs' exact whereabouts are unknown, other than that Stephen Rettig resides in Denver, Colorado, and Wendy Rettig may reside in Las Vegas, Nevada. The Rettigs have not paid any child support for the children, and the likelihood of the Rettigs providing support is, according to Hamilton's petition, "nonexistent."

In 1997, Hamilton, Foster, and the children moved to Omaha, Nebraska. In July 1999, Hamilton and Foster separated. Hamilton and the children moved to another residence in Omaha. Foster also continues to reside in Omaha.

On October 8, 1999, Hamilton filed a petition in Douglas County District Court requesting that he be awarded sole custody of the three children and that Foster be afforded reasonable visitation and be required to pay support for the children. Hamilton based his petition on the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. §§ 43-1201 to 43-1225 (Reissue 1998), and the Uniform Interstate Family Support Act (UIFSA), Neb. Rev. Stat. §§ 42-701 to 42-7,105 (Reissue 1998).

In response, Foster filed a demurrer, claiming that Hamilton's petition failed to state a cause of action because Foster had no legal duty to provide support for the children under UIFSA or any other statute. In an order dated November 24, 1999, the district court sustained Foster's demurrer, finding that the petition failed to state a cause of action. The court further determined that Hamilton would be unable to amend his petition to state a cause of action because neither UIFSA nor any other statute imposed a duty upon Foster to provide support for the children. The order did not specifically address the reason for dismissing Hamilton's request for sole custody pursuant to the NCCJA. Hamilton now appeals.

## ASSIGNMENTS OF ERROR

Hamilton claims, restated and summarized, that the district court erred in (1) determining that Hamilton had not stated a cause of action under the NCCJA and sustaining Foster's demurrer as to that claim, (2) finding that Hamilton's petition failed to state a cause of action under UIFSA, (3) failing to find that Foster

had a duty to support the children under UIFSA based on the fact that she was named joint custodian of the children pursuant to the Colorado custody order, and (4) not allowing Hamilton to amend his petition to allege facts sufficient to show that Foster had a duty to support the children under the doctrine of in loco parentis.

## STANDARD OF REVIEW

Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000). When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the legal conclusions of the pleader. *Id.*

## ANALYSIS

### HAMILTON'S CLAIM UNDER NCCJA

Hamilton claims that the district court erred in determining that Hamilton had not stated a cause of action under the NCCJA and sustaining Foster's demurrer as to that claim. The district court's order did not specifically address Hamilton's custody claim, other than to simply dismiss the entire case based on the determination that Foster had no duty to pay child support.

The NCCJA, Nebraska's version of the Uniform Child Custody Jurisdiction Act (UCCJA), speaks to the jurisdiction of courts of this state to modify child custody decisions initially determined in the courts of other states. § 43-1203. See, also, *Dorszynski v. Reier*, 6 Neb. App. 877, 578 N.W.2d 457 (1998). The end goal of the NCCJA is that litigation concerning the custody of a child take place in the state which can best decide the case. § 43-1201. See, also, *Dorszynski, supra.*

In the present case, the Colorado court entered an initial custody decree awarding permanent custody of the children to Hamilton and Foster. By filing a petition under the NCCJA in Douglas County District Court, Hamilton sought to have the Colorado custody decree modified in Nebraska, awarding sole custody to Hamilton.

Section 43-1214 of the NCCJA, which is identical to § 14 of the UCCJA, provides for a court in this state to modify a custody decree issued in another state under certain circumstances. Section 43-1214(1) states:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 43-1201 to 43-1225 or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

This section establishes a strong preference for the state which originally determined custody to exercise its continuing jurisdiction if the jurisdictional prerequisites enumerated in that state's version of the UCCJA are satisfied. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). Such jurisdictional prerequisites are set forth in § 43-1203, which provides in relevant part:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding . . . .

(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

Colorado has enacted substantially similar jurisdictional prerequisites which were in effect at the time Hamilton's petition was filed. See Colo. Rev. Stat. Ann. § 14-13-104 (West 1997).

In determining whether a Nebraska court should exercise jurisdiction to modify a custody decree issued in another state, we begin with § 43-1214. See *Range v. Range*, 232 Neb.

410, 440 N.W.2d 691 (1989). See, also, *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal. 3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982). Under this section, it must first be determined whether the issuing state appears to have continuing exclusive jurisdiction under the jurisdictional prerequisites enumerated in the UCCJA. See § 43-1214(1)(a). See, also, *State in Interest of D.S.K.*, 792 P.2d 118 (Utah App. 1990). If the issuing state no longer has continuing exclusive jurisdiction, a custody decree may be modified by a Nebraska court if Nebraska itself has jurisdiction under the NCCJA. § 43-1214(1)(a) and (b). See, also, *State in Interest of D.S.K, supra.* When the issuing state no longer has continuing exclusive jurisdiction, § 43-1214(1)(a) is satisfied and there is no requirement that a petitioner also show that the issuing state "declined" jurisdiction. See, *State in Interest of D.S.K., supra*; *Kumar, supra.* However, if the issuing state continues to have jurisdiction under the jurisdictional prerequisites enumerated in its version of the UCCJA, that exclusive jurisdiction cannot be vitiated by another state. See *State in Interest of D.S.K., supra.* In such a case, the issuing state must first decline to exercise jurisdiction before a custody decree may be modified in another state. *Id.*; *Kumar, supra.* See, also, § 43-1214(1)(a).

Thus, in order to satisfy § 43-1214(1)(a), Hamilton must plead facts sufficient to show one of two things: (1) that the Colorado court which rendered the initial decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with the NCCJA *or* (2) if the Colorado court continues to have jurisdiction, that it has declined to assume jurisdiction to modify the decree. Hamilton has not alleged in his petition that Colorado has declined to assume jurisdiction. However, if Hamilton has pled facts sufficient to show that Colorado no longer has continuing exclusive jurisdiction, he may still satisfy § 43-1214(1)(a).

The state which initially enters a custody decree may lose continuing exclusive jurisdiction to modify the decree if it loses all or almost all connection with the child. *Range, supra.* See, also, *Butler v. Grant*, 714 A.2d 747 (Del. 1998); *Lough v. Superior Court (Lough)*, 8 Cal. App. 4th 136, 10 Cal. Rptr. 2d 250 (1992); *Kumar, supra.* Clearly, continuing exclusive juris-

diction is not without limits. *In re Gloria F.*, 212 Cal. App. 3d 576, 260 Cal. Rptr. 706 (1989).

Professor Bodenheimer, reporter for the special committee which drafted the UCCJA, provided the following often-quoted interpretation of § 14 of the UCCJA:

> In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. . . .
>
> . . . .
>
> Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam. L.Q. 203, 214-15 (1981).

Likewise, this court has recognized that when a child and all parties have moved away from the state in which an initial custody decree was granted, deference to that state's continuing jurisdiction is no longer required. *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). Deference to the issuing state's continuing jurisdiction is no longer required because when the child and the parents have moved away from the issuing state, the issuing state no longer meets the jurisdictional prerequisites of § 43-1203(b).

This court has further stated that generally, when another state has entered a child custody decree and one of the parents remains a resident of that state, the courts of this state are without jurisdiction to modify custody unless the first state affirmatively declines jurisdiction. *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992); *In re Interest of J.L.H., J.L.H., and R.H.*, 2 Neb. App. 40, 507 N.W.2d 641 (1993). However, the fact that a parent continues to reside in the issuing state is not

alone sufficient to show that the issuing state retains continuing exclusive jurisdiction. The UCCJA is not meant to simply mediate jurisdictional disputes, but to direct litigation to the state best able to resolve it. *In re Gloria F., supra*. Thus, in order for the issuing state to retain continuing exclusive jurisdiction, not only must a parent or other contestant reside in that state, but the child must continue to have a "significant connection" with that state. § 43-1203(b)(i).

The comments to § 14 of the UCCJA provide guidance as to under what circumstances an issuing state would lose continuing jurisdiction, stating:

> In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case . . . . If, however, all the persons involved have moved away *or the contact with the state has otherwise become slight*, modification jurisdiction would shift elsewhere.

(Emphasis supplied.) Unif. Child Custody Jurisdiction Act § 14, comment, 9IA U.L.A. 580 (1999).

Professor Bodenheimer provides the following example of a situation in which the issuing state would no longer have continuing exclusive jurisdiction to modify that decree:

> A typical example is the case of the couple who are divorced in state *A*, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state *B*, with or without permission of the court to remove the children. State *A* has continuing jurisdiction and the courts in state *B* may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state *B* has in the meantime become the "home state" under section 3. The jurisdiction of state *A* continues and is exclusive as long as the husband lives in state *A unless he loses contact*

*with the children, for example, by not using his visitation privileges for three years.*

(Emphasis supplied.) Brigitte M. Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws*, 22 Vand. L. Rev. 1207, 1237 (1969). See, also, *Marriage of Greenlaw*, 123 Wash. 2d 593, 869 P.2d 1024 (1994); *State in Interest of D.S.K.*, 792 P.2d 118 (Utah App. 1990); *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal. 3d 689, 652 P.2d 1003, 186 Cal. Rptr. 772 (1982).

▮ The majority of courts that have considered the issue of continuing jurisdiction have followed Professor Bodenheimer's reading of the UCCJA and have held that " 'the state in which the initial decree was entered has exclusive continuing jurisdiction to modify the initial decree if: (1) one of the parents continues to reside in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation.' " *Butler v. Grant*, 714 A.2d 747, 752 (Del. 1998), quoting *Marriage of Greenlaw, supra.* See, also, *State in Interest of D.S.K., supra*; *Lough v. Superior Court (Lough)*, 8 Cal. App. 4th 136, 10 Cal. Rptr. 2d 250 (1992); *Daves v. Daves*, 173 Cal. App. 3d 97, 218 Cal. Rptr. 879 (1985).

▮ As stated in *Marriage of Greenlaw*, 123 Wash. 2d at 597, 869 P.2d at 1027, the issuing court will continue to have modification jurisdiction "so long as one of the parties remains in the state and so long as the child's contact with the state continues to be more than slight." When all parties move out of the issuing state *or* when a parent remains in the issuing state but has no contact with the child, contact with the issuing state has become slight. *Daves, supra.* Thus, even if a parent resides in the issuing state, that state may still lose continuing exclusive jurisdiction if that parent does not maintain contact with the child. In such a case, the child no longer has a "significant connection" with the issuing state as required under § 43-1203(b)(i), and the issuing state no longer meets the jurisdictional prerequisites of the UCCJA.

In the present case, the biological father resides in Colorado, the issuing state. However, the father does not have custody or visitation rights and has had no contact with the children since

1994. Hamilton, Foster, and the children have all moved away from the State of Colorado, and according to Hamilton's petition, the children have not lived in Colorado since 1992. The children have lived in Nebraska since 1997. The children's only arguable connection with the State of Colorado is that their biological father, who has had no contact with the children since 1994, resides in that state. Accepting as true the facts pled and the reasonable inferences therefrom, Hamilton has alleged facts sufficient to show that Colorado has lost all or almost all connection with the children and thus no longer has continuing jurisdiction. Because Colorado no longer has continuing jurisdiction, Hamilton is not required to show that Colorado has declined jurisdiction. Hamilton has pled facts sufficient to satisfy § 43-1214(1)(a).

The next step in this analysis is to determine whether Hamilton has sufficiently alleged that Nebraska has acquired jurisdiction over the case as required by § 43-1214(1)(b). Under the NCCJA, one of the circumstances under which a Nebraska court may exercise jurisdiction in a child custody case is when Nebraska is the child's "home state." § 43-1203(a). "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months." § 43-1202(5). In his petition, Hamilton alleged that he, Foster, and the children had been residents of Nebraska for over 1 year at the time of the filing of the petition and continued to reside in Nebraska. Thus, Nebraska is now the children's home state, and the Nebraska court could properly exercise jurisdiction.

Hamilton's petition also includes the additional information required as part of a pleading under the NCCJA. See § 43-1209 (requiring that pleading include children's present address and addresses over past 5 years, names and addresses of persons with whom children lived during that period, whether that party has participated in any other litigation concerning custody of these children, whether there is another pending custody proceeding regarding these children, and whether that party knows of any person not party to proceedings who has physical custody, or claims to have custody or visitation rights). The trial court granted Foster's demurrer on the ground that Foster had no

legal duty to support the children, but failed to address the issue of whether the Nebraska court had jurisdiction to modify the Colorado custody order with respect to the issue of custody only. We determine that Hamilton has alleged sufficient facts to state a cause of action for modification of custody under § 43-1214. Thus, the district court erred insofar as it sustained Foster's demurrer and dismissed Hamilton's custody claim under the NCCJA.

## HAMILTON'S CLAIM UNDER UIFSA

The trial court also dismissed Hamilton's claim for child support, determining that Hamilton did not state a cause of action against Foster for child support under UIFSA. The court further determined that Hamilton could not amend his petition to establish a legal duty on the part of Foster to pay support. Hamilton asserts that his petition contained sufficient facts to state a cause of action under UIFSA. Foster claims that UIFSA is simply not applicable to the claim Hamilton is asserting in this case.

UIFSA, as its name implies, deals with the interstate enforcement and modification of support orders. The general purpose of UIFSA is to unify state laws relating to the establishment, enforcement, and modification of child support orders. *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999); *Kasdan v. Berney*, 587 N.W.2d 319 (Minn. App. 1999). The goal of UIFSA is to streamline and expedite interstate enforcement of support decrees and to eliminate the problems arising from multiple or conflicting support orders from various states by providing for one tribunal to have continuing and exclusive jurisdiction to establish or modify a child support order. See, *OCSE v. Clemmons*, 65 Ark. App. 84, 984 S.W.2d 837 (1999); *Reis v. Zimmer*, 263 A.D.2d 136, 700 N.Y.S.2d 609 (1999); *In re Marriage of Zinke*, 967 P.2d 210 (Colo. App. 1998); *Cowan v. Moreno*, 903 S.W.2d 119 (Tex. App. 1995). UIFSA provides a system where only one child support order may be in effect at any one time. See Unif. Interstate Family Support Act, Prefatory Note, 9IB U.L.A. 241 (1999). See, also, *Linn v. Child Support Enforcement*, 736 A.2d 954 (Del. 1999). UIFSA allows, under certain circumstances, a Nebraska court to enforce or modify a support order issued in another state or to establish a support

order on behalf of a nonresident of this state when a Nebraska court has jurisdiction over the person obligated to pay support. See §§ 42-701 to 42-7,105. Hamilton asserts that under UIFSA, "[a] person can assume a duty to support a child." Brief for appellant at 12. However, UIFSA does not create an independent duty of support. The purpose of UIFSA in regard to child support is to enforce or establish a child support order against someone who has a duty to pay support or to modify an existing child support order when interstate aspects are involved. See § 42-714. Thus, Hamilton cannot use UIFSA to create a duty on Foster's part to pay support. UIFSA's provisions may only be used to enforce an existing support order, establish a support order where no order has previously been established, or modify an existing support order. See §§ 42-714 and 42-733. Hamilton may utilize UIFSA only if his claim fits one of these categories. The claim does not fit for several reasons.

First, Hamilton's claim is not for enforcement of a child support order issued in another state. He is not seeking enforcement of the biological parents' child support obligation as established in the Colorado order. Hamilton's petition states that any possibility that the biological parents will pay support is nonexistent.

Second, Hamilton's claim is not for the establishment of a child support order. Section 42-733 provides in relevant part: "(a) If a support order entitled to recognition under the Uniform Interstate Family Support Act has not been issued, a responding tribunal of this state may issue a support order if: (1) the individual seeking the order resides in another state . . . ."

This section is inapplicable to Hamilton's claim for two reasons. Section 42-733 applies only when a support order entitled to recognition under UIFSA *has not been issued.* In the present case, a support order entitled to recognition regarding these children has been issued by the Colorado court. Section 42-711 provides for recognition of support orders under UIFSA. This section provides that if "only one tribunal has issued a child support order, the order of that tribunal controls and must be so recognized." § 42-711(a). In the present case, only one tribunal has issued a support order, and thus the Colorado order is entitled to recognition and is the controlling order. Additionally, under § 42-733(a)(1), the individual seeking the order must reside in

another state. In the present case, Hamilton, the person seeking the order, does not reside in another state, but resides in Nebraska. Thus, this situation does not involve the establishment of a support order under § 42-733.

Third, Hamiliton's claim is not for modification of a support order recognized under UIFSA. Sections 42-746 and 42-747.01 provide for modification of a child support order issued in another state. However, the facts as pled by Hamilton show that § 42-747.01 is not applicable in this case. This section provides in relevant part: "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order." § 42-747.01(a).

In the present case, all of the parties to the original child support order do not reside in Nebraska. Only Hamilton, Foster, and the children reside in Nebraska. According to Hamilton's petition, the biological parents, who were ordered to pay support under the Colorado order, do not reside in Nebraska. Thus, all parties to the original Colorado support order which Hamilton seeks to modify do not reside in Nebraska and § 42-747.01 is not applicable.

When § 42-747.01 is not applicable, § 42-746 may allow modification of a support order entered in another state. Section 42-746 provides in relevant part:

(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if section 42-747.01 does not apply and after notice and hearing it finds that:

(1) the following requirements are met:

(i) the child, the individual obligee, and the obligor do not reside in the issuing state;

(ii) a petitioner who is a nonresident of this state seeks modification; and

(iii) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written

consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order.

The facts as pled by Hamilton reveal that § 42-746 is not applicable in this case. This section is inapplicable because the petitioner, Hamilton, is not a "nonresident" of this state as required under § 42-746(a)(ii). Hamilton's petition states that he is a resident of Nebraska. Furthermore, Hamilton's petition contains no allegation that the parties have agreed by written consent to submit to the jurisdiction of the Nebraska court under § 42-746(a)(2). Hamilton would be unable to amend his petition to make such an allegation. Even if Hamilton could obtain the biological parents' consent, it is reasonable to infer from the facts pled that Foster would not be willing to file a consent allowing modification to take place in Nebraska. Thus, neither § 42-746 nor § 42-747.01, which allow for modification of support orders, apply under the circumstances of this case.

We conclude that UIFSA provisions are not applicable in the present case because Hamilton's claim does not fit any of the three situations under which UIFSA may be utilized regarding child support. The UIFSA provisions relating to enforcement, establishment, or modification of child support orders simply do not apply to Hamilton's claim.

Hamilton's petition also fails to allege facts sufficient to establish a duty of support on Foster's part on any other basis. In his petition, Hamilton alleges that "under the Uniform Interstate Family Support Act, the Respondent, as joint permanent custodian of the minor children owes a duty of support to the minor children." Hamilton cites the Alabama case of *Ex parte Lipscomb*, 660 So. 2d 986 (Ala. 1994), in support of this proposition. In *Ex parte Lipscomb*, a grandfather and his wife, who was not the child's biological grandmother, were granted "legal custody" of the grandfather's grandchild pursuant to an Alabama statute which expressly provided for this type of custody arrangement. The child's mother was incarcerated, but her parental rights had not been terminated. The grandfather and his wife divorced. The wife was granted custody of the grandchild, and the grandfather was ordered to pay support. The grandfather appealed the order of support, contending that

he had no legal duty to pay support. The Alabama Supreme Court determined that the grandfather had a duty to support the child because he was granted "legal custody" of the child pursuant to the Alabama statute that specifically provided for the grant of such custody and a consequent duty of support. The court determined that because, at the time of the divorce, the grandfather had "legal custody" as specifically defined by the statute, he had a duty to pay child support as ordered in the divorce decree.

*Ex parte Lipscomb* is clearly distinguishable from the present case. *Ex parte Lipscomb* did not involve any interstate issues. The majority of the court in *Ex parte Lipscomb* simply determined that the Alabama legal custody statute created a duty of support in Alabama, the state in which the support order was originally sought. Nebraska has no similar statute. Section 43-1402, which deals with liability for child support, speaks in terms of only parents, the "mother" and "father," being liable for the support of children. Furthermore, as previously determined, UIFSA does not create an independent duty of support and, in any event, UIFSA is not applicable to Hamilton's claim. Hamilton has failed to allege a duty on Foster's part to support the children under this theory and would be unable to amend his petition to establish such a duty under these circumstances.

Finally, Hamilton claims that the trial court erred in not allowing him to amend his petition to assert a duty on the part of Foster to pay child support under the doctrine of in loco parentis. A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. *Weinand v. Weinand, ante* p. 146, 616 N.W.2d 1 (2000); *State on behalf of Hopkins v. Batt,* 253 Neb. 852, 573 N.W.2d 425 (1998). The assumption of the relationship is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship. *Id.* Hamilton argues that he was not permitted to amend his petition to show such relationship between Foster and the children.

In order to stand in loco parentis, one must assume all obligations incident to the parental relationship. *Weinand, supra.* These obligations include providing support for the child and providing day-to-day care for the child. See *id.* Once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. See *Weinand, supra.* See, also, *Quintela v. Quintela,* 4 Neb. App. 396, 544 N.W.2d 111 (1996). Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby. *Quintela, supra.* See, also, *State on behalf of Hopkins, supra; State on behalf of J.R. v. Mendoza,* 240 Neb. 149, 481 N.W.2d 165 (1992); *Hickenbottom v. Hickenbottom,* 239 Neb. 579, 477 N.W.2d 8 (1991).

In the recent case of *Weinand, supra,* this court determined that a child's ex-stepfather was no longer in loco parentis because he was no longer living in the same household as the child and was not carrying out the day-to-day functions of a father, even though he visited the child two to three times a week and was voluntarily paying child support. We determined that because the ex-stepfather was no longer discharging all of the duties of a parent, he was no longer in loco parentis and could not be ordered to pay child support under that doctrine.

Likewise, in the present case, Foster is no longer living in the same household as the children and it is reasonable to infer from the facts pled that she is no longer providing for their daily care. Furthermore, once the person alleged to be in loco parentis denies the obligation to support the child, the in loco parentis relationship terminates. See *Quintela, supra.* A reasonable inference may be drawn from Hamilton's petition requesting that the court enter an order requiring Foster to pay support that Foster has declined to support the children. Accepting as true the facts pled in Hamilton's petition and the reasonable inferences therefrom, we find that Foster has terminated her in loco parentis relationship because she is no longer discharging all duties incident to the parental relation. Thus, she may not be ordered to pay child support on that basis.

Hamilton has failed to allege facts sufficient to show a duty on Foster's part to pay child support. If, upon the sustain-

ment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. *Wilkinson v. Methodist, Richard Young Hosp.*, 259 Neb. 745, 612 N.W.2d 213 (2000). The trial court properly granted Foster's demurrer as to the issue of Hamilton's claim for child support and properly determined that Hamilton would be unable to amend his pleading to allege a duty of support on Foster's part.

## CONCLUSION

Hamilton's petition states a cause of action under the NCCJA on the issue of custody. The trial court erred in granting Foster's demurrer and dismissing Hamilton's custody claim. Hamilton's petition fails to state a cause of action against Foster for child support based on UIFSA or any other grounds. Hamilton would be unable to amend his petition to allege such a duty, and the trial court did not err in dismissing Hamilton's claim for child support without granting leave to amend. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.