Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/11/2018 08:08 AM CDT

Ronald J. Clark, appellant, v.
Nori D. Clark, now known as
Nori D. Carter, appellee.

___ N.W.2d ___

Filed September 4, 2018.    No. A-17-852.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
2. **Child Support: States.** The general purpose of the Uniform Interstate Family Support Act is to unify state laws relating to the establishment, enforcement, and modification of child support orders.
3. ____: ____. The goal of the Uniform Interstate Family Support Act is to streamline and expedite interstate enforcement of support decrees and to eliminate the problems arising from multiple or conflicting support orders from various states by providing for one tribunal to have continuing and exclusive jurisdiction to establish or modify a child support order.
4. ____: ____. The Uniform Interstate Family Support Act provides a system where only one child support order may be in effect at any one time.
5. ____: ____. Following the adoption of the Uniform Interstate Family Support Act, there should not exist multiple or conflicting support orders and only one tribunal shall have continuing and exclusive jurisdiction to establish or modify a child support order.
6. ____: ____. The Uniform Interstate Family Support Act's provisions may only be used to enforce an existing support order, establish a support order where no order has previously been established, or modify an existing support order.
7. **Jurisdiction: Waiver.** Generally speaking, the filing of a general appearance which does not preserve an objection to personal jurisdiction constitutes a waiver of personal jurisdiction.

8. **Statutes: Equity: Jurisdiction.** When a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and a party must exhaust the statutory remedy before it may resort to equity.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Reversed and remanded for further proceedings.

Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

No appearance for appellee.

Moore, Chief Judge, and Arterburn and Welch, Judges.

Welch, Judge.

## INTRODUCTION

Ronald J. Clark (Clark) appeals from an order issued by the Lancaster County District Court dismissing his request to (1) vacate or modify a Nebraska child support order originally issued in August 1999 and modified starting in April 2002 or (2) make a determination regarding whether the Nebraska order or a concurrent Wisconsin child support order is the controlling order. We reverse, and remand for further proceedings.

## STATEMENT OF FACTS

In September 1985, Nori D. Clark, now known as Nori D. Carter (Carter), a resident of Wisconsin, gave birth to the parties' son. At the time of the son's birth, Carter was not married; however, 4 days later, she married Clark, who admitted he was the father. Because there were outstanding birth expenses paid by the State of Wisconsin, Wisconsin commenced a paternity action against Clark to recover those expenses. On March 2, 1989, the "State of Wisconsin[,] Circuit Court[,] Family Division[,] Milwaukee County," entered an order in case No. 80-641 finding that Carter gave birth to the parties' son in September 1985, that Clark was the father, that Carter and Clark were married 4 days later, and that Clark must pay the

State of Wisconsin $2,130 in birth expenses payable at the rate of $43 per month.

Also provided in the record is a document entered by the "State of Wisconsin[,] Circuit Court[,] Family Court Branch[,] Milwaukee County," in case No. 900-426. This document purports to be "In re the Marriage of: State of Wisconsin Nori Clark . . . Petitioner, and Ronald Clark . . . Respondent." The document also reads "FINDINGS AND ORDER" but then recites matters apparently occurring on different dates. The top section of the document references an "ACTION TO COMPEL SUPPORT" as of March 22, 1990, identifies that Clark appeared "in person" but not Carter, and provided that Clark was to pay "SUPPORT" of $152 per month to be payable at the rate of $35 per week commencing April 1, 1990. This top section of the document is not signed.

The lower section of the same document, bearing the date April 3, 1990, states as follows:

ADJOURNED TO: 5-24-90 at 11:15 [and] both TO APPEAR IN PERSON[.]

FINDINGS: THE FOLLOWING FINDINGS ARE MADE: Parties have been separated two years. Child was born 4 days before parent's [sic] marriage; husband acknowledges paternity[.]

Mother works for Am[erican] Airlines, earning $500/mo[nth] gross working part time but she's been off work 3-4 months and just went back. She says she is going off [Aid to Families with Dependent Children]. She had child in a Montessori school but had to take child out because of financial problems.

Order for support is based on husband's income from one job: wife claims he's working a second job, but he denies it. Husband is extremely antagonistic and doesn't want to pay support but he's going to have to do that. . . .

ORDER: BASED ON THESE FINDINGS, THE FOLLOWING ORDERS ARE MADE: Suspend and

hold open past support and birth expense payment in case P80-641.

Matter adjourned to 5-24-90 at 11:15 for review on support; both parties to produce income tax returns for 1989 and YTD statement of current income.

. . . .

This assignment super[s]edes any other assignment in a case between these parties, including the one in Case P80-641.

The second page of this document is signed by "Lucy Cooper (Deputy/Asst.) Family Court Commissioner."

In September 2007, these two Wisconsin cases were consolidated by the "State of Wisconsin[,] Circuit Court[,] Milwaukee County." The court's "EXPARTE ORDER FOR CONSOLIDATION" provided that "[a]ny credit or debt balances owed on the former case(s) shall be removed from the former case(s) and added to the new case."

Separately, the record contains the parties' Nebraska divorce decree from the Lancaster County District Court dated August 24, 1999. On that date, the district court issued a decree governing the marriage of Carter and Clark, dissolved their marriage, divided their property, provided Clark with reasonable visitation of Carter and Clark's "minor child" (not named in the decree), and ordered Clark to pay $395 per month in child support for "one (1) minor child" commencing September 1. This order was modified by the district court on March 29, 2002, to reduce Clark's child support obligation to $300 per month starting April 1.

In October 2016, Clark filed a lawsuit in the Lancaster County District Court claiming that he was the obligor on two separate decrees governing the same obligee and the same child, entered in two separate states, and requesting that the "child support be reduced or modified retroactively to $0 per month or that the original decree and subsequent modification be vacated as to the provisions in said orders related to child support and for such other and further relief as the

Court deems just and equitable." After being served with the complaint, Carter wrote a letter to the district court in which she chastised Clark for serving her at her recently deceased mother's home and for not paying child support, expressing confusion as to why she was being sued in court. Carter did not appear or testify at trial.

At trial, Clark testified that he was formerly married to Carter; that he was the father of their son, who was now an adult; and that he and Carter separated long before their divorce. He testified that neither Carter nor their son ever lived in Nebraska, but that he had moved to Nebraska and sought the divorce from the Lancaster County District Court in 1999 in order to get that part of his life resolved. He also testified that at the time of his divorce, he was aware of the State of Wisconsin's original paternity order, but not the separate child support order. He then testified that he was asking the court to resolve the discrepancy so that he could take care of the arrearages and "move on" with his life.

In connection with the Lancaster County child support order, Clark offered, and the district court received into evidence, a "Payment History Report" from the Nebraska Department of Health and Human Services showing Clark's payment history, including both the arrears balance and interest balance on the obligation. The court also received into evidence a State of Wisconsin payment summary from "Milwaukee Co. Child Support Services," which references an "[o]rder established 4/1/90 @ $152 per month" showing both a "Principle [sic] Ending Balance" as of 2016 and an "AFFIDAVIT OF ARREARS" to the "Circuit Court[,] Milwaukee County" certifying Clark's arrears to the State of Wisconsin and custodial parent governing the consolidated case.

Following the trial, upon Clark's motion, the district court allowed Clark to amend his complaint to add the substantive allegations and prayer that "this court enter and [sic] order making a determination under NEB. REV. STAT. § 42-711 [(Reissue 2016)] as to which child support order

is the controlling order" and "for any such other and further relief as the Court deems just and equitable."

After reviewing the evidence, the district court held:

> The Court finds that [Clark] fails to provide the Court with the necessary evidence and information to make a determination between competing cases in differing jurisdictions. In order to make such determination, the Court lacks the present authority to effectuate the relief requested as it does not have jurisdiction over the out-of-state matter. The Amended Complaint is hereby overruled and the matter is dismissed.

Clark has timely appealed that final order of dismissal to this court.

## ASSIGNMENTS OF ERROR

Clark's assignments of error, consolidated and restated, are that the district court erred (1) in determining that it did not have jurisdiction over the Wisconsin matter for the purpose of determining which state's order is the controlling child support order, (2) in determining that there was insufficient evidence and information to make a determination as to which of the concurrent Wisconsin and Nebraska child support orders was the controlling child support order, and (3) in failing to vacate or modify his Nebraska child support obligation.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *TransCanada Keystone Pipeline v. Nicholas Family*, 299 Neb. 276, 908 N.W.2d 60 (2018).

## ANALYSIS

### Jurisdiction

We first address the district court's finding that it lacked jurisdiction over the out-of-state matter in order to effectuate

the relief requested by Clark. This case involves a request by a Nebraska resident to have a Nebraska court determine which of two child support orders, issued in different states, is the "controlling" child support order. As framed by the amended complaint, the case fits squarely within the terms of the Uniform Interstate Family Support Act (UIFSA), Neb. Rev. Stat. §§ 42-701 to 42-751.01 (Reissue 2016).

[2-4] The Nebraska Supreme court had occasion to discuss the general purpose of the UIFSA in *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000). In *Hamilton*, the Nebraska Supreme Court held:

> UIFSA, as its name implies, deals with the interstate enforcement and modification of support orders. The general purpose of UIFSA is to unify state laws relating to the establishment, enforcement, and modification of child support orders. *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999); *Kasdan v. Berney,* 587 N.W.2d 319 (Minn. App. 1999). The goal of UIFSA is to streamline and expedite interstate enforcement of support decrees and to eliminate the problems arising from multiple or conflicting support orders from various states by providing for one tribunal to have continuing and exclusive jurisdiction to establish or modify a child support order. See, *OCSE v. Clemmons*, 65 Ark. App. 84, 984 S.W.2d 837 (1999); *Reis v. Zimmer*, 263 A.D.2d 136, 700 N.Y.S.2d 609 (1999); *In re Marriage of Zinke*, 967 P.2d 210 (Colo. App. 1998); *Cowan v. Moreno*, 903 S.W.2d 119 (Tex. App. 1995). UIFSA provides a system where only one child support order may be in effect at any one time. See Unif. Interstate Family Support Act, Prefatory Note, 9IB U.L.A. 241 (1999). See, also, *Linn v. State Child Support Enforcement*, 736 A.2d 954 (Del. 1999).

260 Neb. at 899, 620 N.W.2d at 114.

[5] It is clear from this general purpose statement that, following the adoption of the UIFSA, there should not exist

multiple or conflicting support orders and that only one tribunal shall have continuing and exclusive jurisdiction to establish or modify a child support order. It is also clear that both Nebraska and Wisconsin have adopted versions of the UIFSA. See Wis. Stat. Ann. ch. 769 (West 2009 & Cum. Supp. 2017). But Clark is not asking the district court to establish or modify an order; he is asking the district court to determine which child support order is controlling. Assuming, without deciding, that courts in both Wisconsin and Nebraska have issued two conflicting child support orders, we must first determine whether the district court has jurisdiction to determine which child support order is controlling. The district court held that it did not have jurisdiction to make a determination governing the Wisconsin court's order. We disagree.

Section 42-711(c) provides:

If two or more child support orders have been issued for the same obligor and the same child, upon request of a party who is an individual or that is a support enforcement agency, a tribunal of this state having personal jurisdiction over both the obligor and the obligee who is an individual shall determine which order controls under subsection (b) of this section. The request may be filed with a registration for enforcement or registration for modification pursuant to sections 42-736 to 42-747.04 or *may be filed as a separate proceeding*.

(Emphasis supplied.) Section 42-711(b) provides, in pertinent part:

If a proceeding is brought under the [UIFSA] and two or more child support orders have been issued by tribunals of this state, another state, or a foreign country with regard to the same obligor and the same child, a tribunal of this state having personal jurisdiction over both the obligor and individual obligee shall apply the following rules and by order shall determine which order controls and must be recognized:

(1) If only one of the tribunals would have continuing, exclusive jurisdiction under the [UIFSA], the order of that tribunal controls.

(2) If more than one of the tribunals would have continuing, exclusive jurisdiction under the [UIFSA]:

(A) an order issued by a tribunal in the current home state of the child controls; or

(B) if an order has not been issued in the current home state of the child, the order most recently issued controls.

[6] Notably, the Nebraska Supreme Court stated that the "UIFSA's provisions may only be used to enforce an existing support order, establish a support order where no order has previously been established, or modify an existing support order. See §§ 42–714 and 42–733." *Hamilton v. Foster*, 260 Neb. 887, 900, 620 N.W.2d 103, 114 (2000).

When read together with § 42-711(b) and (c), this means that in order for Clark to bring this action, the action must constitute one to enforce, establish, or modify a support order, and in connection therewith, if two or more child support orders have been issued, one of which has been issued in this state, he can request a tribunal in this state, if it has personal jurisdiction, to determine which order controls. Although this case is unusual in the sense that Clark is the obligor bringing the action, we hold that the action represents a claim by Clark to enforce a child support order wherein he properly requested the district court, under the UIFSA, to determine the controlling order.

That said, although the district court has subject matter jurisdiction to hear the controversy, it can only do so if it has "personal jurisdiction over both the obligor and individual obligee," see § 42-711(b). Here, Clark is a Nebraska resident filing the action and subjecting himself to the jurisdiction of the district court to resolve this controversy. Conversely, Carter is a nonresident of Nebraska residing in Wisconsin.

Section 42-705 provides, in relevant part:

> (a) In a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> . . . .
>
> (2) The individual submits to the jurisdiction of this state by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
>
> . . . .
>
> (8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

The record reflects that neither Carter nor the parties' son, now in his thirties, have ever lived in Nebraska. That said, after Clark filed this lawsuit and served Carter in Wisconsin, Carter sent a document addressed to the District Court of Lancaster County, Nebraska, referencing "Ronald J. Clark v. Nori D. Clark" and included both the case number assigned to this action ("Case ID: CI 98 9026904") and the case number governing the 1999 divorce action ("Old Case ID: 576589"). In that document, Clark generally directed that all future documents be sent to her at a different address; generally asked why she was being sued despite Clark's failure to consistently pay child support over the years; generally provided that she and her mother have funded the parties' son over the years, including his education; and expressed her disbelief that Clark will ever make good on his child support obligations. Carter signed the document, and the clerk of the district court filed the document. In the document, Carter never objected to the suit's being brought in Nebraska nor mentioned anything that could be reasonably construed as contesting personal jurisdiction.

[7] Generally speaking, the filing of a general appearance which does not preserve an objection to personal jurisdiction constitutes a waiver of personal jurisdiction. See *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Section 42-705(a)(2) appears to provide an even broader grant of personal jurisdiction over a nonresident individual if that individual files "a responsive document having the effect of waiving any contest to personal jurisdiction." After reviewing the document filed by Carter in this matter, we believe the language of that document is sufficient to have effected a waiver of any contest to personal jurisdiction. In so finding, we note that Carter's written response made reference to both the pending action and the parties' divorce action—where she apparently waived any objection to personal jurisdiction, which action resulted in the child support order that is now part of the dispute. Under these facts, we hold that the district court had a basis to exercise personal jurisdiction over Carter pursuant to § 42-705.

Because we hold that Clark did properly file a claim under the UIFSA where the district court had subject matter jurisdiction to resolve the controversy and rightfully acquired personal jurisdiction over Carter to enforce a support order, we now turn to the district court's holding that it lacked "the necessary evidence and information to make a determination between competing cases in differing jurisdictions."

INSUFFICIENT EVIDENCE AND INFORMATION
TO DETERMINE CONTROLLING
CHILD SUPPORT ORDER

As we previously described, § 42-711 governs proceedings brought under the UIFSA where two or more support orders have been issued in this state and others. When a court in this state is called upon to "determine which order controls and must be recognized," pursuant to § 42-711(b), the individual must follow the remaining directives in § 42-711. Those directives include: "A request to determine which is

the controlling order shall be accompanied by a copy of every child support order in effect and the applicable record of payments. The requesting party shall give notice of the request to each party whose rights may be affected by the determination." § 42-711(d).

The record appears to contain copies of the alleged conflicting orders and record of payments, and it is difficult to determine from the district court's order the specific bases of the district court's determination that it lacked "the necessary evidence and information to make a determination between competing cases in differing jurisdictions." But the UIFSA appears to provide for matters of uncertainty in connection with these claims. In addition to the special rules of evidence and procedure contained in § 42-729, the UIFSA contemplates, and includes a provision for, direct communication between courts of different jurisdictions. Specifically, § 42-730 provides:

A tribunal of this state may communicate with a tribunal outside this state in a record or by telephone, electronic mail, or other means to obtain information concerning the laws, the legal effect of a judgment, decree, or order of that tribunal, and the status of a proceeding. A tribunal of this state may furnish similar information by similar means to a tribunal outside this state.

Additionally, § 42-731 provides: "A tribunal of this state may: (1) request a tribunal outside this state to assist in obtaining discovery; and (2) upon request, compel a person over which it has jurisdiction to respond to a discovery order issued by a tribunal outside this state."

We additionally note that § 42-714 provides:

(a) Except as otherwise provided in the [UIFSA], sections 42-714 to 42-732 apply to all proceedings under the [UIFSA].

(b) An individual petitioner or a support enforcement agency may initiate a proceeding authorized under the [UIFSA] by filing a petition in an initiating tribunal

for forwarding to a responding tribunal or by filing a petition or a comparable pleading directly in a tribunal of another state or a foreign country which has or can obtain personal jurisdiction over the respondent.

The UIFSA then provides in § 42-717:

(a) Upon the filing of a petition authorized by the [UIFSA], an initiating tribunal of this state shall forward the petition and its accompanying documents:

(1) to the responding tribunal or appropriate support enforcement agency in the responding state; or

(2) if the identity of the responding tribunal is unknown, to the state information agency of the responding state with a request that they be forwarded to the appropriate tribunal and that receipt be acknowledged.

(b) If requested by the responding tribunal, a tribunal of this state shall issue a certificate or other document and make findings required by the law of the responding state. If the responding tribunal is in a foreign country, upon request the tribunal of this state shall specify the amount of support sought, convert that amount into the equivalent amount in the foreign currency under applicable official or market exchange rate as publicly reported, and provide any other documents necessary to satisfy the requirements of the responding foreign tribunal.

Accordingly, because of the statutory powers authorized by the legislatures of the respective states to cooperate and obtain or provide information necessary to resolve these controversies, we reverse the district court's decision and remand the cause to the district court—which tribunal we have held has jurisdiction of this matter—to forward the complaint to the appropriate responding tribunal within the State of Wisconsin, to obtain from the Wisconsin tribunal all information deemed necessary by the district court to "determine which order controls and must be recognized," to make all relevant findings under § 42-711(f), and to otherwise comply with the terms of the UIFSA.

[8] Upon remand, we note that, as it relates to counsel's claim during oral argument that his claim is grounded in both the UIFSA and equity, when a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and a party must exhaust the statutory remedy before it may resort to equity. See *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). See, also, *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014) (equitable remedies are generally not available where there exists adequate remedy at law); *Ganser v. County of Lancaster*, 215 Neb. 313, 317, 338 N.W.2d 609, 611 (1983) ("suit in equity will not lie when the plaintiff has a plain and adequate remedy at law").

## Failure to Vacate or Modify Nebraska Child Support Obligation

Having determined that the order of the district court must be reversed and the cause remanded for further proceedings, we do not reach Clark's assigned error that the district court erred in failing to vacate or modify his Nebraska child support obligation.

## CONCLUSION

The district court had jurisdiction over this matter, and the UIFSA provides the court with powers authorized by the legislatures of the respective states to cooperate and obtain or provide information necessary to resolve controversies such as those presented in the instant case. Accordingly, we reverse the order of the district court and remand the cause for further proceedings.

Reversed and remanded for further proceedings.