[700 NYS2d 609]

In the Matter of JUDSON REIS, Respondent, v WENDY E. ZIM-MER, Appellant.

Fourth Department, December 30, 1999

## APPEARANCES OF COUNSEL

*Sullivan & Oliverio,* Buffalo (*Paul D. Pearson* of counsel), for appellant.

*Birzon & Davis, P. C.,* Buffalo (*Paul Ivan Birzon* of counsel), for respondent.

## OPINION OF THE COURT

Lawton, J.

Respondent appeals from the third and fourth ordering paragraphs of an order of Supreme Court that (a) reduced her vacation time with the parties' two minor children, and (b) modified the existing child support order, pursuant to which petitioner paid child support to respondent, by directing that the child support paid be deposited into an account to defray visitation expenses. She contends that: (1) the court lacked subject matter jurisdiction to modify the child support order; (2) there is no basis in the record for the court to modify the child support order; and (3) the visitation schedule set by the court is not in the children's best interests and therefore must be revised. For the reasons that follow, the order should be reversed and the petition and counterclaim dismissed on the ground that the court lacked subject matter jurisdiction over this proceeding.

## I

The facts are largely undisputed. Respondent and petitioner were married in Buffalo, New York, on June 21, 1987 and are the parents of two minor children, one born August 13, 1988, and the other born January 1, 1990. The parties lived together in both New York City and Long Island while completing their respective postsecondary educations. The parties last lived together in Hamilton, Massachusetts, and they separated on December 21, 1993. From December 1993 until June 1995, respondent and the parties' two children lived in the marital home in Massachusetts, while petitioner resided in a nearby townhouse. In 1995 respondent relocated to Buffalo, New York, with the parties' two children in accordance with a stipulation entered into by the parties in a Massachusetts proceeding. At the present time, respondent has relocated to Oregon with the parties' two children, her current husband and two children from her second marriage. Petitioner now lives in Ipswich, Massachusetts, with his current wife and stepdaughter.

Respondent's physical custody of the children was initially pursuant to the parties' December 21, 1993 separation agreement. That agreement provided for joint custody, with primary physical residence with respondent and liberal visitation with petitioner. It further provided that petitioner would pay child support to respondent in accordance with the Massachusetts Child Support Guidelines, and that "[t]his Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts." A judgment of divorce incorporating the separation agreement was entered in Massachusetts

on April 13, 1994. In December 1994 respondent commenced a proceeding in Massachusetts in which she sought the court's authorization to relocate the children to Buffalo, New York. In June 1995 the parties entered into an agreement permitting the requested relocation and providing for liberal visitation with petitioner, including six weeks in the summer, two school vacation weeks throughout the year, shared holiday vacations and one weekend a month. Child support was set at $395 a month, not including the travel expenses for petitioner and the children between New York and Massachusetts. The agreement further provided that "Massachusetts will retain jurisdiction over the children and the parties, to the extent otherwise consistent with law and for so long as [petitioner] remains resident in the Commonwealth."

On March 17, 1998, petitioner commenced an action in Massachusetts seeking a temporary restraining order and a permanent injunction prohibiting respondent from relocating the children to Portland, Oregon. Petitioner also sought an order requiring respondent to relocate the children back to Massachusetts. On March 26, 1998, petitioner commenced this proceeding in Supreme Court, Erie County, requesting that New York assume jurisdiction and seeking an order restraining respondent from relocating the parties' children to Oregon and awarding him primary physical custody.

On April 14, 1998, respondent moved to dismiss this proceeding based on lack of subject matter jurisdiction pursuant to CPLR 3211 (a) (2) and 28 USC § 1738A (d). In support thereof, respondent asserted that, pursuant to Domestic Relations Law § 75-g (1), the New York court was precluded by the pending Massachusetts action from exercising jurisdiction. Respondent relied on the Parental Kidnaping Prevention Act ([PKPA] 28 USC § 1738A) and the Uniform Child Custody Jurisdiction Act ([UCCJA] codified in New York in Domestic Relations Law §§ 75-a—75-z) to support dismissal on the ground that Massachusetts had not declined jurisdiction. Additionally, she asserted that the parties' judgment of divorce reserves jurisdiction to Massachusetts.

In response, petitioner asserted that New York had jurisdiction over this matter because New York is the "home state" of the children under Domestic Relations Law § 75-d (1) (a) and, therefore, "absent any superseding authority such as the * * * (PKPA), New York has jurisdiction to pass upon the relief requested." He also asserted that he was not requesting a modification of an existing custodial order but rather was seeking to maintain the status quo.

On June 23, 1998, respondent answered and counterclaimed for "modification" of the present custody arrangement to permit her relocation of the children to Oregon. She reiterated the fact that she has been the primary custodial parent since the parties' separation and offered to revise the visitation schedule to give petitioner "block" time during school vacations and to pay the incremental costs for the children to visit and stay in communication with petitioner. In reply, petitioner denied that moving the children to Oregon would be in their best interests.

The court thereafter held a fact-finding hearing, during which petitioner stated that he had withdrawn his complaint in the Massachusetts action. When the court asked respondent's counsel what the "decision" in Massachusetts was, he responded, "Massachusetts declined jurisdiction."

At the conclusion of the fact-finding hearing and after an in camera interview with the children and the Law Guardian, the court denied petitioner's request for custody of the children and granted respondent's counterclaim to relocate the children to Portland, Oregon. The court concluded that it was in the best interests of the children to remain with respondent. Additionally, the court ordered that petitioner have visitation with the children for all but the first and last weeks of their summer vacation, all Christmas and spring breaks, Thanksgiving break from Wednesday morning to Sunday evening, three other three- or four-day weekends upon 30 days' written notice, as well as any other reasonable time upon two weeks' written notice. Finally, the court directed petitioner to deposit his child support payments into an account to be used by him to pay for his and/or the children's transportation costs, a 1-800 toll-free telephone number for the children to reach petitioner and/or their grandparents, and any other "reasonable expense related to enhancing or facilitating the relationship between the Petitioner and the children." In its order, the court specified that it was not modifying the Massachusetts child support order.

## II

Respondent argues that, in ordering petitioner to deposit his child support payments into an account to pay for transportation costs incurred in exercising his right to visitation and to set up 1-800 telephone numbers for the children to reach him and/or their grandparents on the east coast, the court thereby modified the Massachusetts order. Respondent argues that the New York court lacked subject matter jurisdiction to modify

that order. Petitioner responds that the court did not modify the Massachusetts order because it did not adjust the total amount of petitioner's child support obligation.

■ We agree with respondent. We recognize that the order was intended to foster the father-child relationships and that respondent is not in need of any child support in light of her combined household annual income of $260,000. Despite the court's statement to the contrary, however, we conclude that the court in fact modified petitioner's existing child support obligations under the liberal definition of "modification" set forth in the Uniform Interstate Family Support Act ([UIFSA] Family Ct Act art 5-B) and the Full Faith and Credit for Child Support Orders Act ([FFCCSOA 28 USC § 1738 B).

### III

28 USC § 1738B (b) defines "modification" as "a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." The UIFSA, as set forth in New York in article 5-B of the Family Court Act, is Federally mandated to replace the Uniform Support of Dependents Law found in now-repealed Domestic Relations Law article 3-A (*see*, Sobie, Practice Commentaries, Introductory Commentary, McKinney's Cons Laws of New York, Book 29A, Family Ct Act art 5-B, at 203). Both the UIFSA and the FFCCSOA apply to this case and must be read in conjunction. Indeed, "[t]he two acts provide a virtually iron-clad structure for child support * * * enforcement" (Sobie, *id.*, at 204-205).

The goal of the UIFSA is to eliminate the problems arising from multiple support orders from various States by providing for one tribunal to have continuing and exclusive jurisdiction to establish or modify a child support order (*see, Peddar v Peddar*, 43 Mass App Ct 192, 196, 683 NE2d 1045, 1048; *Child Support Enforcement Div. v Brenckle*, 424 Mass 214, 218, 675 NE2d 390, 392 [once a court enters a support order, no court may modify it as long as the obligee, obligor or child for whose benefit the order was issued continues to reside within the jurisdiction of the court unless each party consents in writing to the other jurisdiction]).

Under the UIFSA, a foreign child support order may be modified only if the order is registered with New York's support enforcement agency and the requirements of Family Court Act § 580-611 are met (Sobie, Practice Commentaries, *op. cit.*, Family Ct Act § 580-611, at 278-280). The applicable sections of the Family Court Act are as follows:

**"§ 580-611. Modification of child support order of another state.**

"(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if section 580-613 does not apply and after notice and hearing it finds that:

"(1) the following requirements are met:

"(i) the child, the individual obligee, and the obligor *do not* reside in the issuing state;

"(ii) a petitioner who is a nonresident of this state seeks modification; and

"(iii) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

"(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order" (emphasis added).

**"§ 580-613. Jurisdiction to modify child-support order of another state when individual parties reside in this state.**

"(a) If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order."

The other applicable statute, the FFCCSOA, requires that all child support orders be given full faith and credit and precludes out-of-State modifications of such orders by establishing jurisdictional rules whereby States are to "refrain from modifying or issuing contrary orders except in limited circumstances" (*Matter of Isabel M. v Thomas M.*, 164 Misc 2d 420, 422). The FFCCSOA was enacted "(1) to facilitate the enforcement of child support orders among the States; (2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and (3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders" (Pub L 103-383, § 2 [c], 108 US Stat 4064; *see, Matter of Isabel M. v Thomas M., supra*, at 424).

In the FFCCSOA, Congress explicitly set forth the conditions under which a State could "modify" a support order of another

State. 28 USC § 1738B (d) defines "Continuing jurisdiction" as: "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of *any individual contestant* unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order" (emphasis added).

Section 1738B (e) sets forth when an existing support order may be modified:

"A court of a State may modify a child support order issued by a court of another State if—

"(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

"(2) (A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

"(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order."

## IV

Consistent with those provisions, once Massachusetts entered the original support order, no other court could modify that order for as long as the obligee, obligor or child for whose benefit the order was entered continued to reside within the jurisdiction of that court, unless each party consented in writing to another jurisdiction. Here, petitioner, the obligor, continues to reside in Massachusetts. Therefore, Massachusetts has continuing exclusive jurisdiction over the issue of child support. New York lacked jurisdiction to modify the initial child support order because both parties did not give written consent for New York to exercise jurisdiction over this matter.

Respondent's reliance on the Child Support Standards Act (CSSA) is misplaced. The objectives of the CSSA are to assure that both parents contribute to the support of the children and that the children do not suffer the economic burden of the separation (*see, Matter of Graby v Graby*, 87 NY2d 605, 612, *rearg denied* 88 NY2d 875; *Matter of Cassano v Cassano*, 85 NY2d 649, 652). Neither of those objectives is at issue. Additionally, the fact that New York has jurisdiction under the UCCJA is of no moment because, where the UCCJA and the

PKPA are in conflict, the PKPA prevails pursuant to the Supremacy Clause of the US Constitution (*see, Matter of Michael P. v Diana G.*, 156 AD2d 59, 64-65, *lv denied* 75 NY2d 1003; *Farrell v Farrell*, 133 AD2d 530; *Enslein v Enslein*, 112 AD2d 973, 975).

## V

■ We now turn to the issue whether the court had subject matter jurisdiction over the custody determination, i.e., the visitation rights of petitioner. A custody determination is defined as "a court decision and court orders and instructions providing for the temporary or permanent custody of a child, including *visitation rights*" (Domestic Relations Law § 75-c [2] [emphasis added]; *see, Matter of Collum v Kelley*, 262 AD2d 1057). A court's lack of subject matter jurisdiction is not waivable and "may be [raised] at any stage of the action" (*Robinson v Oceanic Steam Nav. Co.*, 112 NY 315, 324). Moreover, despite the fact that neither respondent nor petitioner raised lack of subject matter jurisdiction in regard to visitation, this Court may consider the issue of subject matter jurisdiction *sua sponte* (*see, Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 718). Upon consideration of that issue, we conclude that New York does not have subject matter jurisdiction to render a "custody determination."

That conclusion requires analysis of the provisions of the PKPA and its relationship to the UCCJA. Section 75-d (1) of the Domestic Relations Law provides that this State has jurisdiction only when:

"(a) this state (i) is the home state of the child at the time of commencement of the custody proceeding, or (ii) had been the child's home state within six months before commencement of such proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child; or

"(d) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction."

The other relevant statute, the PKPA, provides in pertinent part:

**"§ 1738A. Full faith and credit given to child custody determinations * * ***

"(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant."

A court's jurisdiction to modify a custody determination by a court of another State is limited by subdivisions (f) and (g) of 28 USC § 1738A, as follows:

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination."

Because New York was the children's home State, it potentially has jurisdiction to render a custody determination. Pursuant to the PKPA, however, only one State at a time may have jurisdiction over the issue of custody (*see, Delk v Gonzalez*, 421 Mass 525, 530-532, 658 NE2d 681, 683-684). Additionally, the Court of Appeals has strictly construed the provisions of the UCCJA in *Vanneck v Vanneck* (49 NY2d 602, 610-611), holding that a pending action in Connecticut precluded a New York court from exercising jurisdiction in the absence of communication with the Connecticut tribunal (*see also, Matter of*

*Michael M. v Tanya E.*, 256 AD2d 1137, *lv dismissed in part and denied in part* 93 NY2d 907). Here, Massachusetts has continuing jurisdiction over the issue of custody, and there has been no communication with the Massachusetts tribunal concerning the appropriate forum. Thus, New York does not have jurisdiction (*see, Vanneck v Vanneck, supra*; *Matter of Jackson-Ordia v Ordia*, 224 AD2d 529).

Our decision in *Matter of Michael M. v Tanya E. (supra)* does not require a different result. In that case, we concluded that New York had jurisdiction over the custody dispute rather than Kentucky, despite the facts that Kentucky was the home State of the children and that the only proof that Kentucky had declined jurisdiction was the affirmation in open court of respondent's attorney. In reaching that conclusion, we relied on the fact that New York had already made prior orders regarding custody and, therefore, under the UCCJA and PKPA, New York retained jurisdiction over this matter despite the subsequent move to Kentucky by the children and petitioner (*see, Matter of Michael M. v Tanya E., supra*, at 1138).

Here, unlike in *Michael M.*, the sister State (Massachusetts) made the initial custody and child support determination and New York is the children's home State. The only similarity is that in both cases the New York court was advised by respondent's counsel that the sister State had declined jurisdiction in the matter. Neither of the New York Judges made any follow-up correspondence in an attempt to contact the court in the sister State, as required by Domestic Relations Law § 75-g (3), to make certain that the sister State had declined jurisdiction. Proper administration of those statutes requires more formal attention than unsupported statements of counsel.

## VI

The remaining issue is whether Massachusetts "no longer has jurisdiction" over the matter (28 USC § 1738A [f] [2]). Determination of that issue is dependent on the PKPA, which provides that a State will continue to have jurisdiction as long as (1) it has jurisdiction under its own laws, and (2) either the child or any contestant remains a resident of the State (*see,* 28 USC § 1738A [c] [1]; [d]). Here, there is no dispute that petitioner remains a resident of Massachusetts.

We further conclude that Massachusetts had continuing jurisdiction. When the parties entered into the separation agreement, the custody, child support and visitation provisions of which were incorporated into the judgment of divorce, Mas-

sachusetts had jurisdiction as the parties' marital domicile. Thereafter, the Massachusetts court granted the parties' divorce and made the initial custody determination. Moreover, the parties stipulated in the Massachusetts proceeding with respect to relocation to Buffalo that Massachusetts would continue to have jurisdiction as long as petitioner resided in Massachusetts. Finally, Massachusetts follows the UCCJA, codified at Massachusetts General Laws Annotated chapter 209B, which would permit it to exercise jurisdiction (*see, Orchard v Orchard*, 43 Mass App Ct 775, 778-781, 686 NE2d 1066, 1069-1071).

The requirements under the PKPA for Massachusetts to continue to exercise jurisdiction are therefore satisfied (*see*, 28 USC § 1738A [d], [f]). Additionally, Massachusetts has not formally declined to exercise jurisdiction (*see,* 28 USC § 1738A [f] [2]). The fact that New York is and has been the home State of the children for several years does not deprive the Massachusetts court of jurisdiction (*see, Clark v Boreanaz*, 159 AD2d 981; *see also, Matter of Mott v Rivazfar*, 236 AD2d 819, *affd* 91 NY2d 856; *Capobianco v Willis*, 171 AD2d 834, 836).

## VII

In sum, we conclude that the court should have deferred jurisdiction to Massachusetts. Indeed, when petitioner commenced this proceeding, a Massachusetts action was pending and it was not until after respondent moved to dismiss the proceeding in New York that petitioner withdrew his complaint in the Massachusetts action. Under the PKPA, New York could not concurrently exercise jurisdiction while Massachusetts had jurisdiction to make a "custody determination" as defined by 28 USC § 1738A (b) (3) (*see, Matter of Michael M. v Tanya E., supra*). Additionally, when respondent moved to Buffalo, the parties entered into an agreement that Massachusetts would continue to have jurisdiction over custody issues, "a clause that was accepted by [respondent] with full knowledge that she would be residing with the child[ren] in another state" (*Vernon v Vernon*, 210 AD2d 170, 171).

Accordingly, the order should be reversed and the petition and counterclaim dismissed. The judgment of dismissal to be entered by either party should be stayed for 20 days from the date of service of a copy of the order of this Court with notice of entry in order to afford the parties, if they choose to do so, the opportunity to establish jurisdiction in Supreme Court in accordance with the provisions of 28 USC § 1738A (f) and

§ 1738B (e), thereby enabling the court to determine the merits of this proceeding in accordance with this opinion.

PINE, J. P., dissents in part and votes to modify in the following opinion in which WISNER, J., concurs. We respectfully dissent in part. We agree with the majority that respondent's appeal has merit in that Supreme Court did in fact modify the Massachusetts support order despite its statement to the contrary. We further agree that the New York court lacks subject matter jurisdiction to modify that order without compliance with the Uniform Interstate Family Support Act (Family Ct Act art 5-B) and the Full Faith and Credit for Child Support Orders Act (28 USC § 1738B). We disagree, however, that we should vacate the order with respect to custody and visitation on the ground of lack of subject matter jurisdiction. The order insofar as it permitted relocation was not appealed and the order insofar as it modified visitation was appealed on the merits, not on the ground of lack of subject matter jurisdiction. Although lack of subject matter jurisdiction may be raised at any time (*see, Matter of Fry v Village of Tarrytown,* 89 NY2d 714, 718), no stay was sought, the issue has not been raised on appeal, and respondent and the children presumably relocated as planned to Portland, Oregon in the summer of 1998. There is no doubt that Supreme Court had the power "to deal with the general subject involved in the action" (*Hunt v Hunt,* 72 NY 217, 230). The court concluded that Massachusetts had declined to exercise jurisdiction. Under those circumstances we would not raise, *sua sponte,* whether the court lacked subject matter jurisdiction over custody and visitation issues here, much less determine the issue. On the merits, we would affirm the visitation order as a reasonable exercise of discretion.

HAYES and SCUDDER, JJ., concur with LAWTON, J.; PINE, J. P., and WISNER, J., dissent in part and vote to modify in a separate opinion by PINE, J. P.

Order reversed, on the law, without costs, and petition and counterclaim dismissed. [*See,* 270 AD2d —, Mar. 30, 2000.]