**Bonnie A. LUNCEFORD, Respondent,**

v.

**John H. LUNCEFORD, Appellant.**

**No. WD 65338.**

Missouri Court of Appeals,
Western District.

Nov. 7, 2006.

Ronald L. Jurgeson, Esq., Lee's Summit, MO, for appellant.

William A. Mayer, Esq., Kansas City, MO, for respondent.

Before ELLIS, P.J., LOWENSTEIN and SPINDEN, JJ.

HAROLD L. LOWENSTEIN, Judge.

John Lunceford appeals a judgment entered by the circuit court of Jackson County, awarding child support arrearage of $3,770 and $1,000 of attorney's fees to Bonnie Lunceford.

## I. FACTS

The marriage of Bonnie Lunceford ("Mother") and John Lunceford ("Father") was dissolved in West Germany in 1989. Under the decree entered in West Germany, John Lunceford was awarded sole custody of the couple's only child, Nicole, who was born September 13, 1986, in Kansas. (A chronology of events appears *infra.*)

Subsequent to their return to the United States, by agreement of the parties, the West German decree was adopted and modified by a Kansas court in 1991. The modified decree awarded "primary residential custody" of Nicole to Mother, then a resident of New Jersey. Father remained a Kansas resident and was ordered to pay child support to Mother.

In January 2001, Mother, still a resident in New Jersey, moved to modify child sup-

port in a Kansas. At that time, Father was a Missouri resident. The Kansas court determined that it did not have jurisdiction to modify the support order. Mother then moved to transfer the action to New Jersey. The Kansas court determined that Missouri, not it nor New Jersey, had subject matter jurisdiction to modify the order, but the Kansas court transferred the entire action to Missouri in August 2002.

Father moved to Tennessee sometime between August 2002 and October 2003. In October 2003, the Missouri court increased the child support and ordered father to pay Mother's attorneys' fees. Mother registered the 2003 Missouri support order in Tennessee for enforcement.

In August 2004, Mother again came before a Missouri court petitioning for an increase in child support. In response, Father moved to terminate child support pursuant to the Kansas decree, as Nicole would soon attain the age of 18 in September 2004. Father's motion to terminate support was denied and the Missouri trial court entered judgment for mother in February 2005. Mother's motion to increase child support was denied; however, the trial court did order Father to pay Mother a child support arrearage of $3,770.[1] Court costs and $1,000 of Mother's attorneys' fees were assessed against Father. Father, pursuant to Section 452.340.3(5),[2] was ordered to continue paying $754 per month child support while Nicole was enrolled in an institution of higher learning.

---

1. Father stopped paying child support payments upon Nicole's eighteenth birthday in September 2004. The $3,770 awarded reflects the payment due for the months October 2004 through February 2005.

2. Section 452.340.5 provides:

If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a

The court granted Father's motion for a stay pending appeal. Father filed this appeal in April 2005.

| | |
|---|---|
| 1986 | Parties marry in Kansas. Child born in Kansas. |
| 1987 | Parties live in W. Germany, Husband in the Army. |
| 1988 | Parties separate |
| 1989 | Divorce in W. Germany. Custody to Father. Mother and child move to New Jersey. Father stays in Germany. |
| 1990 | Divorce Decree adopted and modified and registered in Kansas (by agreement). Custody to Mother (who is still in New Jersey), and Father to pay $50.00 support. |
| 2001 | Father now in Missouri. Mother in New Jersey. Mother files in Kansas to increase child support to $675. Father objected to the Kansas hearing case since neither party, nor the child resided in Kansas. Mother's motion for increase granted. |
| 2002 | Mother files in Kansas to transfer to New Jersey. Father files to transfer to New Jersey. Kansas says that only Missouri has jurisdiction, and transfers to Missouri. |
| 2003 | Mother files for modification in Missouri. Father now lives in Tennessee. Mother files judgment in Tennessee. Missouri increases support to $754 monthly, retroactive to 2002. |
| 2004 | Mother files another motion in Missouri to modify. Child graduates from high school and turns eighteen years old on September 13. In October, Father files to terminate child support and declare child emancipated under Kansas law. |
| 2005 | Missouri trial court finds that upon transfer from Kansas to Missouri, and Mother's modification in 2003, the judgment became "subject to the laws of the State of Missouri," and, in this state, "an obligor's support obligation does not automatically terminate upon the child's eighteenth birthday." The court then denied Father's 2004 motion. |
| | Missouri court also denied Mother's motion to increase support, and orders payment of the arrearage ($3,770), for the time Father did not pay, and awards Mother $1,000 in attorneys' fees (stay is granted). |

Mother has been a resident of New Jersey since 1990. Daughter has been a New Jersey resident since moving back to this

graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs.

country and has never been a Missouri resident. Father has been a Tennessee resident since May 2003.

Husband asserts that the trial court had no jurisdiction in 2005 to entertain Wife's motion to modify support and, for that matter, to assess an arrearage and award her attorney's fees. Alternatively, he suggests the trial court should have ruled favorably on his motion to terminate support based on Kansas law, which would have determined the child was emancipated at the age of eighteen. If Kansas law does apply to the *duration* of child support, as opposed to the amount of support, then the question arises as to whether Missouri had jurisdiction to declare Father's obligation case in September 2003. There is no question here that Kansas law would have rendered the child emancipated on her eighteenth birthday. The standard of review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and focuses here on whether the trial court erroneously declared or applied the law.

## II. DISCUSSION

### SUBJECT MATTER JURISDICTION

■■■ Issues of subject matter jurisdiction are inherent in any case on appeal. *Taylor v. Taylor*, 908 S.W.2d 361, 363 n. 1 (Mo.App.1995). "Subject matter jurisdiction exists only when a court ... has the right to proceed to determine the controversy at issue or grant the relief requested." *Garcia–Huerta v. Garcia*, 108 S.W.3d 684, 686 (Mo.App.2003). Subject matter jurisdiction is conferred by operation of law. *Mo. Soybean Assoc. v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003).

■ In child support determination, subject matter jurisdiction is governed by the Uniform Interstate Family Support Act ("UIFSA") codified in Missouri at Sections 454.850, et seq.[3] Drafted by the National Conference of Commissioners on Uniform State Laws, UIFSA was enacted in Missouri in 1997. Section 454.850. UIFSA only addresses child support and issues of paternity and parentage. *State ex rel. Dep't. of Soc. Serv. v. Hudson*, 158 S.W.3d 319, 323 (Mo.App.2005).

### JURISDICTION TO MODIFY A CHILD SUPPORT ORDER

■ Under UIFSA, child support is subject to a one-order system, whereby only one state's child support order governs at any given time. *Superior Court v. Ricketts*, 153 Md.App. 281, 836 A.2d 707, 729 (2003). The state *issuing* the child support order enjoys continuing, exclusive jurisdiction to modify the order. Section 454.867. By providing a single tribunal with continuing, exclusive jurisdiction to establish or modify the support order, UIFSA seeks to avoid problems that arise from multiple orders in multiple states. *Reis v. Zimmer*, 263 A.D.2d 136, 700 N.Y.S.2d 609, 613 (1999).

The issuing tribunal retains its continuing, exclusive jurisdiction to modify the support order except in exceptional circumstances as provided in Section 454.867(a), Missouri's enactment of UIFSA Section 205:[4]

(a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

---

**3.** All statutory references are to RSMo. (2000) unless otherwise noted.

**4.** The text of Section 205(a) of UIFSA (1996) and Section 454.867(a) are identical. Mis-

souri has not adopted and Section 454.867 does not reflect the changes made to Section 205(a) in 2001.

(1) as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) until each individual party has filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

The drafters of UIFSA note in their comment to Section 205 that if all the relevant persons—namely the obligor, oblige, and the child—have left the issuing state, that state no longer has an appropriate nexus to the parties to justify the continuing jurisdiction over the child support order. Unif. Interstate Family Support Act § 205 cmt., 9 U.L.A. 284 (2001) ("the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that State have no reason to expend public funds on the process"). Although the issuing state loses jurisdiction to modify the child support order if all the parties leave the state, until the order is modified by another state in accordance with UIFSA, the issuing state's order remains in effect not only in the issuing state but also in any state in which the order has been registered. *Id.*

Missouri courts have not directly addressed how the provisions of Section 454.867(a) apply to modifying a Missouri support order where all of the relevant parties have left this state. However, a number of other states have addressed how their equivalent to UIFSA Section 205 applies in circumstances very similar to the case at bar.

In *Zaabel v. Konetski*, the Supreme Court of Illinois noted that clauses (1) and (2) of their enactment of Section 205 are "not written in parallel fashion; clause (1) uses the phrase 'as long as' where clause (2) uses 'until.'" 209 Ill.2d 127, 282 Ill. Dec. 748, 807 N.E.2d 372, 376 (2004) (*citing Etter v. Etter*, 18 P.3d 1088, 1090 (Okla.Civ.App.2001)). The court noted that because the two clauses are not written in parallel fashion, the relationship between the two clauses is, therefore, ambiguous. *Id.*

The facts in *Zaabel* are analogous to those of the case at bar. After the parties' marriage was dissolved in Illinois, the mother and children moved to Iowa, and the father moved to Arizona. *Id.* The mother moved to modify child support in Illinois. *Id.* at 374. In reviewing Illinois' equivalent to Section 205(a), the court held the provision was ambiguous about whether the issuing state, Illinois, had lost jurisdiction over the child support when all the parties had moved outside the state but not all parties had filed consents for jurisdiction elsewhere. *Id.* at 376. In holding that the intent of the legislation could not be inferred from the plain language, the Illinois court looked to other jurisdictions for interpretation of this provision. *Id.* The court found support for the contention that, by negative implication, subsection (1) indicates that the Illinois tribunal had lost jurisdiction to modify the order when all the parties moved from the state. *Id.*

The Kansas appellate court reached a similar result in *In re Marriage of Myers*, 30 Kan.App.2d 1223, 56 P.3d 1286 (2002). In *Myers*, the parties were divorced in Kansas. The mother and child moved to Arkansas and the father moved to Texas. *Id.* at 1287. The mother moved to modify child support in the issuing state, Kansas. *Id.* The trial court held that "since it appears that neither party has filed any motions requesting that jurisdiction over the issues of child support be moved or transferred to another state pursuant to [Kansas' equivalent of Section 205(a)(1) and (2) ], this court continues to have jurisdic-

tion over the issue of child support obligations." *Id.* In reviewing both its own case law and case law of other jurisdictions, the Kansas appellate court determined that as all the parties resided outside of Kansas, under UIFSA the Kansas trial court did not have subject matter jurisdiction to modify the child support order. The mother had "the option of asking the originating Kansas tribunal to forward her motion to modify to Texas, or she [could] file the motion to modify in Texas herself." *Id.* at 1291.

The result an Arizona court reached in *McHale v. McHale* supports the above analysis. 210 Ariz. 194, 109 P.3d 89, 90 (Ariz.Ct.App.2005). In *McHale,* the parties divorced in Arizona. *Id.* The mother moved with the child to Texas; the father, the child support obligor, moved to California. *Id.* The mother sought to modify the child support in Arizona. *Id.* The father responded by moving to dismiss, claiming Arizona lacked continuing, exclusive jurisdiction to modify the original support order. *Id.* The trial court denied the father's motion to dismiss claiming it still maintained jurisdiction as another state had not modified the original Arizona order. *Id.* at 90–91. The court ordered the father to pay arrears and modified child support. *Id.* at 91. The appellate court held that under UIFSA, "[i]f all parties and the child reside elsewhere, the issuing state loses its continuing, exclusive jurisdiction—which in practical terms means the issuing tribunal loses its authority to modify its order." *Id.* at 92.

Virtually every jurisdiction that has addressed this issue has concluded that the issuing tribunal loses subject matter jurisdiction when all of the parties to the child support action have moved outside the state. *See Knowlton v. Knowlton,* 110 P.3d 578, 579 (Okla.Civ.App.2005); *In re Marriage of Metz,* 31 Kan.App.2d 623, 69 P.3d 1128, 1132 (2003) (Kansas court no

longer had continuing, exclusive jurisdiction to modify the child support order when mother, father, and children had moved from Kansas); *Cohen v. Powers,* 180 Or.App. 409, 43 P.3d 1150, 1152 (2002) (Alabama court no longer had continuing, exclusive jurisdiction over support order under UIFSA because neither party resided in Alabama); *Jurado v. Brashear,* 782 So.2d 575, 580–81 (La.2001) (Louisiana court lost continuing, exclusive jurisdiction to modify child support after the parties and children left the state); *Etter v. Etter,* 18 P.3d 1088, 1090 (Okla.Civ.App.2001) (trial court did not have jurisdiction under UIFSA to modify child support after both parties had moved out of state); *LeTellier v. LeTellier,* 40 S.W.3d 490, 493–94 (Tenn. 2001) (UIFSA does not confer subject matter jurisdiction upon the Tennessee court to hear mother's petition to modify the District of Columbia's support order); *In re B.O.G.,* 48 S.W.3d 312, 318, (Tex.App. 2001) (Texas court no longer had jurisdiction to modify the support order under UIFSA because the parties no longer resided in Texas).

Moreover, Missouri courts have repeatedly held that UIFSA prohibits a Missouri court from modifying a foreign child support order registered in this state against a non-resident obligor, reasoning that the provisions of UIFSA require the obligee seeking modification to play an "away game" on the obligor's field. *See State ex rel. Havlin v. Jamison,* 971 S.W.2d 938 (Mo.App.1998) (holding that Missouri court did not have subject matter jurisdiction under UIFSA to modify a Tennessee child support order registered in this state against the non-resident obligor); *Phillips v. Fallen,* 6 S.W.3d 862 (Mo. banc 1999) (holding that a Washington court was without subject matter jurisdiction to modify a Kansas support order where the obligor father lived in Missouri). If Missouri lacks subject matter jurisdiction to

modify an order against a non-resident obligor when the obligee is a resident, consistency requires that Missouri lacks subject matter jurisdiction to modify when both the obligor and obligee are non-resident.

■ To conclude that Missouri does not have jurisdiction to modify a foreign support order against a non-resident obligor but would have jurisdiction to modify a Missouri court order against a non-resident obligor when the obligee and child are both non-resident is incongruous. Therefore, this court finds the analysis of the jurisdictions addressing the application of UIFSA Section 205(a) and the comments of the drafters of UIFSA to be persuasive. Under Section 454.867(a)(1), Missouri loses its continuing, exclusive jurisdiction to modify a Missouri child support order when neither the obligor, obligee, nor child is a resident of Missouri. Although Missouri loses its jurisdiction to modify the order, the Missouri order remains in effect until the support order is properly modified by another state pursuant to the provisions of UIFSA. Section 454.867(c).

■ In this case, the Missouri court did not have subject matter jurisdiction to hear Mother's petition to modify child support filed in August 2004. Mother and Nicole have lived in New Jersey since 1991. When Mother petitioned to modify child support in January 2001, Kansas determined that it did not have continuing, exclusive jurisdiction over the child support order. At that time, Mother was still resident in New Jersey, but Father had moved to Missouri. Missouri acquired jurisdiction, or became the responding jurisdiction, when Kansas, the issuing jurisdiction, transferred the case to Missouri in August 2002.

In October 2003, Missouri properly modified the child support order pursuant to Section 454.973 [5] and thus acquired continuing, exclusive jurisdiction over the child support order. Section 454.973(d).[6] Sometime between August 2002, when the petition to modify was transferred to Missouri, and October 2003, when Missouri entered judgment increasing Father's child support obligation, Father moved to Tennessee.

Thus, at the time Mother petitioned the Missouri court to increase child support in August 2004, Mother was a resident of New Jersey, and Father, the obligor, was a resident of Tennessee. Pursuant to Section 454.967(a), it would appear that Missouri had lost its continuing, exclusive jurisdiction to modify the existing child support order as Father was a Tennessee resident since May 2003.

UIFSA requires, in effect, that a party seeking to modify a child support order is required to play on the other party's field. Under UIFSA, a party may modify a child support order issued by another state if three criteria are met:

**5.** Section 454.973 sets forth three criteria a responding state must meet before modifying a child support order under UIFSA. In order to properly modify under Section 454.973(a)(1), the responding tribunal must determine that;
(i) the child, the individual obligee, and the obligor do not reside in the issuing state;
(ii) a petitioner who is a nonresident of this state seeks modification; and
(iii) the respondent is subject to the personal jurisdiction of the tribunal of this state.

Missouri may also modify a child support order from another state if the obligor and obligee file consents with the issuing tribunal conferring jurisdiction to modify on the Missouri court. Section 454.973(a)(2).

**6.** Section 454.973(d) provides: "On issuance of an order modifying a child support order issued in another state, a tribunal of this state becomes the tribunal of continuing, exclusive jurisdiction."

(A) neither the child, nor the individual obligee, nor the obligor do not reside in the issuing state;

(B) the petitioner who is a nonresident of this State seeks modification; and

(C) the respondent is subject to the personal jurisdiction of this state.

Unif. Interstate Family Support Act § 611, cmt., 9 U.L.A. 284 (1996). Jurisdiction may also be conferred through a written consent filed with the issuing tribunal. *Id.*

■ The drafters of UIFSA explain the practical considerations of this provision in their comments to Section 611 addressing jurisdiction to modify:

> In short, the obligee is required to register the existing order and seek modification of that order in a State that has personal jurisdiction over the obligor other than the State of the obligee's residence. Again, almost invariably this will be the State of residence of the obligor.... The same is true of the obligor who also is required to make a motion to modify support in a State other than that of his or her residence.... Modification and enforcement in the same forum promotes efficiency.

*Id. See also Jurado,* 782 So.2d at 581 ("When the obligor wishes to reduce his obligation, the reduction must be sought in the obligee's state of residence; when the obligee wishes an increase in support, that increase must be sought in the obligor's state of residence."). Given the provisions of UIFSA and persuasive case law, Mother's motion to modify child support must be filed in Tennessee, the state of residence of the obligor Father. Mother has already registered the 2003 Missouri child support order for enforcement in Tennessee. Mother must now seek modification in the same state.

## JURISDICTION TO ENFORCE THE CHILD SUPPORT ORDER

### DOES THE ISSUING STATE'S ORDER CONTROL AS TO DURATION OF SUPPORT?

■ Although an issuing state may lose subject matter jurisdiction to modify a child support order, that state may still enforce the child support order then in effect until the order is properly modified by another state pursuant to UIFSA. *Zaabel,* 282 Ill.Dec. 748, 807 N.E.2d at 376. Courts, in analyzing whether the issuing state loses subject matter jurisdiction to modify a child support order when all the parties are non-resident, have addressed whether the issuing state retains jurisdiction to enforce the order. *See Jurado,* 782 So.2d at 579; *Commonwealth ex rel. Kenitzer v. Richter,* 23 Va.App. 186, 475 S.E.2d 817, 820 (1996).

The Supreme Court of Illinois, in *Zaabel,* discussed that Section 205(a)(2) clearly refers to modification, reasoning that the provisions concerning continuing, exclusive jurisdiction were limited to modification of the child support order. 282 Ill.Dec. 748, 807 N.E.2d at 376. The Kansas courts have also addressed jurisdiction to enforce when the state has lost jurisdiction to modify. *In re Marriage of Metz,* the appellate court determined that the Kansas court retained jurisdiction to enforce the child support order after the parties moved out of state even though Kansas lost jurisdiction to modify. 69 P.3d at 1133. *In re Marriage of Myers,* the Kansas appellate court cites to *Jurado* where the Supreme Court of Louisiana stated: "Significantly, there is no limbo situation as feared by the court of appeal, when both parents and the child move out of the issuing state. The court of the issuing state retains jurisdiction to *enforce* its order, but not to *modify* the order." 56 P.3d at 1291 (*citing Jurado,* 782 So.2d at 580).

■ Once again, virtually every jurisdiction that has considered the matter has held that although the issuing state loses jurisdiction to modify a child support order when the obligor, obligee, and child all leave the issuing state, the issuing state retains jurisdiction to enforce until the child support order is modified by another state pursuant to UIFSA.[7] Consistent with these jurisdictions, this court likewise finds that until another state modifies a Missouri child support order pursuant to UIFSA, a Missouri court may enforce a Missouri child support order even if the obligor, obligee, and child all reside outside this state.

The trial court in the case at bar retained the jurisdiction to *enforce* the child support order entered in October 2001. In enforcing the order, the trial court ordered Father to continue child support while Nicole was enrolled in college under Section 452.340.3(5). However, Father contends that the trial court erred in extending the duration of his child support obligation beyond that provided in the Kansas divorce decree. Consistent with Kansas law, the original Kansas divorce decree provided that child support would terminate when Nicole attained the age of eighteen. Father contends that under UIFSA, the trial court could not extend this duration beyond that provided in the Kansas decree. This court finds support for Father's contention in the comments of the drafters of UIFSA and in Missouri case law.

The intent of UIFSA as to which jurisdiction's law controls the duration of child support is most clearly expressed in the drafter's comments to UIFSA Section 611.[8] In its comments to the 2001 amendments to UIFSA—amendments yet to be adopted in Missouri—the drafters claim that "[f]rom its original promulgation UIFSA determined that the duration of child-support obligation should be fixed by the controlling order." Unif. Interstate Family Support Act § 611, cmt., 9 U.L.A. 284 (2001). In the parlance of UIFSA, the "initial controlling order" is the first child support issued under UIFSA. *Id.* The comments state that even if the "initial controlling order" is modified and replaced by a new child support order, "the duration of child support remains constant, even though virtually every other aspect of the original order may be changed." *Id.*

Vesting control of the duration of child support in the first order is consistent with the policy of UIFSA to promulgate a single-order system for child support and avoid forum shopping by the parties under a child support order. The drafters specifically address the problem of "rolling" child support orders:

Some courts have sought to subvert this policy by holding that completion of the obligation to support a child through age 18 established by the now-completed controlling order does not preclude the imposition of a new obligation thereafter to support the child through age 21 or even age 23 if the child is enrolled in higher education.

---

7. Section 454.867(c) provides that:

If a child support order of this state is modified by a tribunal or another state pursuant to 454.850 to 454.997 or a law substantially similar to sections 454.850 to 454.997, a tribunal of this state loses its continuing exclusive jurisdiction with regard to prospective enforcement of the order issued in this state, and may only

(1) enforce the order that was modified as to amounts accruing before the modification;

(2) enforce nonmodifiable aspects of that order; and

(3) provide other appropriate relief for violations of that order which occurred before the effective date of the modification.

8. UIFSA Section 611 corresponds to Section 454.973 RSMo.

Unif. Interstate Family Support Act § 611, cmt., 9 U.L.A. 284 (1996). To clarify this intent even further, the 2001 amendments to UIFSA have added subsection (d) to Section 611. This section provides that "[I]n a proceeding to modify a child-support order, the *law* of the *State* that is determined to have *issued* the *initial controlling order governs* the *duration* of child support. The obligor's fulfillment of the duty of support established by that order precludes imposition of a further obligation of support by a tribunal of this State." Unif. Interstate Family Support Act § 611, 9 U.L.A. 284 (2001) (emphasis added).

As mentioned above, Missouri has not adopted the 2001 amendments to UIFSA. If the amendments had been adopted, the question of whether the Missouri trial court properly ordered Father to continue child support beyond the termination date provided in the Kansas divorce decree would be easily addressed. Regardless, Missouri case law supports this intention to vest the initiating state with control over the duration of child support. For example, in *Kerr v. Kerr,* the father moved to terminate child support pursuant to an Oklahoma divorce decree and child support order. 100 S.W.3d 912 (Mo.App.2003). The parties' marriage had been dissolved in Oklahoma in 1988. *Id.* at 913. The mother had custody of their only child, and the father was ordered to pay child support. *Id.* Mother moved to Missouri, and the father moved to Minnesota. *Id.*

The Oklahoma child support order provided that the "child support obligation was to have terminated when [the child] reached the age of majority, eighteen, unless she was continuously enrolled in high school, in which case support was to continue until she reached her nineteenth birthday or graduated from high school,

whichever first occurred." *Id.* at 914. This court noted that under Oklahoma law, a parent's child support obligation ends when the child graduates from high school or reaches the age of nineteen, whichever occurs first. *Id.* The child graduated from high school on May 20, 2001. *Id.* at 913. The following day, the Oklahoma child support order was registered with the Missouri court, and Father moved to emancipate her as of May 20, 2001, pursuant to the Oklahoma divorce decree. *Id.* The trial court emancipated the child and terminated the child support obligation, but then sustained the Mother's motion to set aside the order. Subsequently. The trial court overruled Father's motion to emancipate and terminate the child support. Father appealed. *Id.*

This court analyzed whether the trial court could extend the child support obligation past the child's eighteenth birthday in a UIFSA modification proceeding. *Id.* at 914. Citing Section 454.973(c),[9] this court determined that the Oklahoma court could not extend the child support obligation beyond that provided for by Oklahoma law. *Id.* Therefore, the Missouri trial court was also "powerless to extend the appellant's child support obligation past [the child's] eighteenth birthday, in that she had already graduated from high school at the age of seventeen." *Id.* at 914–15.

Although the child support order in *Kerr* was registered in Missouri, Oklahoma still exercised continuing, exclusive jurisdiction over the order. Here, the child support order was modified in Missouri; thus, Missouri had continuing, exclusive jurisdiction over the order. Nevertheless, the result in *Kerr* is consistent with the expressed intent of the UIFSA drafters to prohibit a subsequent jurisdiction from extending the

---

**9.** "A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state."

709

duration of the child support obligation beyond that provided by law in the state issuing the "original controlling order." The holding in *Kerr* supports an interpretation of Missouri's statute consistent with the intent of the UIFSA.

 Here, the initial child support order was issued in Kansas. Under Kansas law, barring an agreement between the parents to the contrary, a child is emancipated upon the age of eighteen or upon the completion of high school, whichever occurs first. Kan. Stat. Ann. § 60–1610(a)(1) (2005). Under the rationale of *Kerr*, a Kansas court would be powerless to extend the child support beyond the age eighteen. Moreover, UIFSA invests Kansas, the first state to enter a child support order with control over the duration of the child support obligation. Therefore, pursuant to UIFSA, certainly under *Kerr*, the Missouri court was prohibited from extending the child support obligation beyond the age of emancipation provided in the Kansas order. Therefore, Father's child support obligation terminated by operation of law on September 13, 2004.

### III. Conclusion

Despite Kansas' unwillingness and Missouri's willingness to address the parent's motions, it nonetheless appears that under UIFSA, the trial court was without subject matter jurisdiction to hear Mother's petition for child support modification. Even if Missouri had jurisdiction to enforce the existing child support order, the trial court here could not extend the duration of the child support obligation *beyond* that provided in the *original Kansas child support order*. Despite the motions to modify the amount of support filed in this state, and the attempt to do so in New Jersey, Kansas is still the issuing state, and its law is determinative in this case as to the duration of child support. The trial court erred in failing to dismiss Mother's peti-

tion to modify child support filed in August 2004 for lack of subject matter jurisdiction and in extending Father's child support obligation beyond Nicole's eighteenth birthday. The judgment is reversed and the cause remanded for declaration that the child was emancipated on September 13, 2004.

ALL CONCUR.