[917 NYS2d 379]

In the Matter of Rebecca L. Bowman, Appellant, v Jason R. Bowman, Respondent.

Third Department, February 17, 2011

APPEARANCES OF COUNSEL

*Pro Bono Appeals Program*, Albany (*Cynthia Feathers* of counsel), for appellant.

*Jason R. Bowman*, San Diego, California, respondent pro se.

OPINION OF THE COURT

PETERS, J.P.

Petitioner and respondent were married in Washington and are the parents of a daughter (born in 2005). Following the par-

ties' separation in 2007, petitioner and the child relocated to Saratoga County and respondent moved to California. Pursuant to a judgment of divorce entered in Washington which incorporated, but did not merge, a custody order and order of child support, petitioner was granted custody and respondent was awarded visitation and ordered to pay child support in the amount of $479 per month until the child reached 18 years of age, as well as a certain percentage of extraordinary health care expenses.

In 2009, petitioner filed a petition in Saratoga County to modify respondent's visitation. Respondent answered and cross-petitioned seeking sole custody of the child. Both parties appeared before Family Court and, in December 2009, an order was entered modifying the visitation provisions of the custody order. In the meantime, petitioner registered the Washington support order in New York and commenced this proceeding seeking an upward modification. Respondent moved to dismiss the petition on the ground that New York did not have personal jurisdiction over him or subject matter jurisdiction to modify the Washington support order. A Support Magistrate granted respondent's motion to dismiss the petition for lack of subject matter jurisdiction. Family Court subsequently dismissed petitioner's objections regarding jurisdiction and confirmed the Support Magistrate's order, prompting this appeal.

Petitioner's contention that Family Court has jurisdiction to modify the Washington child support order centers around a perceived conflict between the jurisdictional requirements contained in the Uniform Interstate Family Support Act (hereinafter UIFSA; *see* Family Ct Act art 5-B) and the Federal Full Faith and Credit for Child Support Orders Act (hereinafter FFCCSOA; *see* 28 USC § 1738B). "FFCCSOA 'follow[s] the contours of UIFSA' . . . [and t]he two statutes have complementary goals" (*Matter of Auclair v Bolderson*, 6 AD3d 892, 893 [2004], *lv denied* 3 NY3d 610 [2004], quoting *LeTellier v LeTellier*, 40 SW3d 490, 498 [Tenn 2001]). UIFSA, which Congress required each state to adopt in order to receive federal funding (*see Matter of Spencer v Spencer*, 10 NY3d 60, 65 [2008]), was created "to alleviate the confusion engendered by multiple child support orders from different jurisdictions . . . [and] is addressed to the courts' subject matter jurisdiction to entertain support proceedings where there is more than one state involved" (*Ventura v Leong*, 68 AD3d 1318, 1320 [2009] [citations omitted]; *see Matter of Spencer v Spencer*, 10 NY3d at 66; *Matter of Auclair v*

*Bolderson*, 6 AD3d at 893-894). FFCCSOA "requires that all child support orders be given full faith and credit and precludes out-of-[s]tate modifications of such orders by establishing jurisdictional rules whereby [s]tates are to refrain from modifying or issuing contrary orders except in limited circumstances" (*Matter of Reis v Zimmer*, 263 AD2d 136, 142 [1999] [internal quotation marks and citation omitted], *amended* 270 AD2d 968 [2000]; *see* 28 USC § 1738B [a]; *Matter of Spencer v Spencer*, 10 NY3d at 65; *Matter of Auclair v Bolderson*, 6 AD3d at 893). Like UIFSA, FFCCSOA was enacted

> "(1) to facilitate the enforcement of child support orders among the [s]tates; (2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and (3) to avoid jurisdictional competition and conflict among [s]tate courts in the establishment of child support orders" (Pub L 103-383, § 2 [c]).

Under both UIFSA and FFCCSOA, the state issuing a child support order retains continuing, exclusive jurisdiction over that order so long as an individual contestant continues to reside in the issuing state (*see* Family Ct Act § 580-205 [a], [d]; 28 USC § 1738B [d], [e] [2] [A]; *Matter of Spencer v Spencer*, 10 NY3d at 66; *Matter of Auclair v Bolderson*, 6 AD3d at 894). Here, inasmuch as neither the parties nor the child continues to reside in Washington, that state ceased to have continuing, exclusive jurisdiction (*see* Family Ct Act § 580-205 [a] [1]; 28 USC § 1738B [d]). This fact alone, however, does not confer upon the New York courts the power to modify the child support order.

Where, as here, the issuing state has lost continuing jurisdiction, UIFSA confers jurisdiction upon the New York courts to modify an out-of-state support order only if that order is registered in New York (*see* Family Ct Act § 580-611 [a]) and "(1) none of the parties or children continues to reside in the issuing state; (2) the party seeking modification is not a resident of the modifying state; and (3) the nonmoving party is subject to personal jurisdiction in the modifying state" (*Matter of Auclair v Bolderson*, 6 AD3d at 894; *see* Family Ct Act § 580-611 [a] [1]). Putting aside, for the moment, the question of whether respondent is subject to the personal jurisdiction of New York, it is not disputed that petitioner resides in New York. Therefore, under UIFSA, Family Court lacks jurisdiction to modify the Washington support order.

FFCCSOA, on the other hand, provides that where the issuing court loses its continuing, exclusive jurisdiction, a state court may modify a child support order issued by another state "if . . . the court has jurisdiction to make such a child support order pursuant to [28 USC § 1738B] subsection (i)" (28 USC § 1738B [e] [1]). 28 USC § 1738B (i), in turn, provides that

> "[i]f there is no individual contestant or child residing in the issuing [s]tate, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another [s]tate shall register that order in a [s]tate *with jurisdiction over the nonmovant* for the purpose of modification" (emphasis added).

The parties' dispute centers on the meaning of the phrase "jurisdiction over the nonmovant."

Petitioner argues that the phrase "jurisdiction over the nonmovant" in FFCCSOA contemplates only a requirement of personal jurisdiction, not subject matter jurisdiction, and to the extent that UIFSA sets forth the additional requirement that the party seeking modification be a nonresident of the modifying state, it is preempted by FFCCSOA under the Supremacy Clause of the US Constitution. Respondent, on the other hand, argues that the term "jurisdiction over the nonmovant" in FFCCSOA should be interpreted to refer to both personal and subject matter jurisdiction, and that FFCCSOA should be read as incorporating the subject matter jurisdiction requirements of UIFSA—i.e., the nonresidency requirement—such that the jurisdictional requirements of the two statutes are harmonious. Initially, we agree with petitioner that the term "jurisdiction over the nonmovant" plainly and expressly refers to personal jurisdiction alone, and not subject matter jurisdiction (*see Draper v Burke*, 450 Mass 676, 684-685, 881 NE2d 122, 128 [2008]; *but see LeTellier v LeTellier*, 40 SW3d 490, 498-499 [Tenn 2001], *supra*). Indeed, in *Matter of Auclair v Bolderson* (6 AD3d 892 [2004], *supra*)—a case in which we were not confronted with the question of whether the provisions of FFCCSOA and UIFSA conflict—this Court interpreted this phrase to mean "personal jurisdiction over the nonmoving party" (*id.* at 894). Moreover, inasmuch as we find the phrase "jurisdiction over the nonmovant" to be clear and unambiguous, we need not consider the legislative history of FFCCSOA to aid in our interpretation (*see Matter of Amorosi v South Colonie Ind. Cent. School Dist.*, 9 NY3d 367, 373 [2007]; *Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 106-107 [1997]).

■ In light of our conclusion that FFCCSOA requires only personal jurisdiction, and given the absence of UIFSA's nonresidency requirement in FFCCSOA, we are confronted with the issue of whether FFCCSOA preempts this inconsistent provision of UIFSA. In determining whether state law is preempted by federal law under the Supremacy Clause (*see* US Const, art VI, cl 2), our " 'sole task is to ascertain the intent of Congress' " (*Rosario v Diagonal Realty, LLC*, 8 NY3d 755, 763 [2007], *cert denied* 552 US 1141 [2008], quoting *California Fed. Sav. & Loan Assn. v Guerra*, 479 US 272, 280 [1987]).

> "Congressional preemptive intent may be discerned in three ways: (1) expressly in the language of the [f]ederal statute; (2) implicitly, when the [f]ederal legislation is so comprehensive in scope that it is inferable that Congress intended to fully occupy the 'field' of its subject matter; or (3) implicitly, when [s]tate law actually 'conflicts' with [f]ederal law" (*Drattel v Toyota Motor Corp.*, 92 NY2d 35, 42 [1998] [citation omitted]; *accord Rosario v Diagonal Realty, LLC*, 8 NY3d at 763).

Here, FFCCSOA does not contain an express statement by Congress that it intended to preempt UIFSA. On the issue of implied preemption, we find both the existence of an actual conflict and an intent by Congress to occupy the field, thereby impliedly preempting the jurisdictional requirements of UIFSA.

As previously noted, FFCCSOA and UIFSA both attempt to eliminate judicial competition and conflicting orders in interstate child support disputes by establishing clear, definite rules as to which state has jurisdiction to modify or enforce child support orders (*see* 28 USC § 1738B [a]; Pub L 103-383, § 2 [c]). And, a review of the legislative history of FFCCSOA reveals that Congress determined that there was a need for uniformity among the states as to the enforcement of child support orders.[1] As a result of these and other related problems, Congress exercised its authority, under the Full Faith and Credit Clause,

---

1. In its report that accompanied the bill containing FFCCSOA, the House of Representatives noted that hearings held before various subcommittees of Congress "have demonstrated the inadequacy of existing [s]tate law to protect the interests of children and custodial parents in enforcing child support orders where the non-custodial parent lives in a different [s]tate" (HR Rep 206, 103rd Cong, 1st Sess, at 4 [1993]). The report also pointed out that "the Full Faith and Credit clause of Article IV of the Constitution, and implementing legislation adopted by the Congress, have generally not been construed to apply to orders where the matter involves an ongoing obligation and the

the Commerce Clause, the Due Process Clause, and the General Welfare Clause to enact FFCCSOA (*see* Pub L 103-383, § 2; HR Rep 206; S Rep 361). Specifically, FFCCSOA states that each state "shall enforce according to its terms a child support order . . . of another [s]tate; and . . . *shall not* seek or make a modification of such an order *except in accordance with [its provisions]*" (28 USC § 1738B [a] [emphasis added]). In our view, this congressional directive, as well as the legislative history behind the enactment of FFCCSOA, supports a finding that this federal jurisdictional statute establishes a policy of federal preemption in modification and enforcement of out-of-state child support.[2] Accordingly, because UIFSA conflicts with FFCCSOA in this regard, the jurisdictional provisions of UIFSA are preempted by those of FFCCSOA by operation of the Supremacy Clause.

Our conclusion here is analogous to the impact of the enactment of the Federal Parental Kidnaping Prevention Act of 1980 (28 USC § 1738A [hereinafter PKPA]), which requires that full faith and credit be given to child custody determinations, upon the Uniform Child Custody Jurisdiction Act (hereinafter UCCJA), embodied in Domestic Relations Law former article 5-A. Like UIFSA, UCCJA had been enacted by all 50 states and was designed to prevent jurisdictional competition and conflict between state courts in the enforcement and modification of custody and visitation orders (*see* Domestic Relations Law former § 75-b [1] [a]). The purposes of UCCJA are to "discourage

---

court retains the power to modify its decision" (HR Rep 206, 103rd Cong, 1st Sess, at 4-5 [1993]).

Likewise, the Senate found that "a large and growing number of child support cases involve disputes across state lines, and the laws by which courts determine their authority to establish and modify child support orders are not uniform" (S Rep 361, 103rd Cong, 2d Sess, at 5, reprinted in 1994 US Code Cong & Admin News, at 3261-3262). The Senate report stated that "[t]his lack of uniformity . . . has led to a number of deficiencies in child support collection [and] encourages noncustodial parents to relocate outside the [s]tates where their children and custodial parents reside, in order to avoid the jurisdiction of the courts of such [s]tates" (S Rep 361, 103rd Cong, 2d Sess, at 5, reprinted in 1994 US Code Cong & Admin News, at 3262).

2. Although the United States Supreme Court has held that " '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the [s]tates and not to the laws of the United States' " (*Rose v Rose*, 481 US 619, 625 [1987], quoting *In re Burrus*, 136 US 586, 593-594 [1890]; *accord Hisquierdo v Hisquierdo*, 439 US 572, 581 [1979]), FFCCSOA is a procedural and jurisdictional statute which does not impose principles of substantive law on the states (*cf. In re Clausen*, 442 Mich 648, 670 n 24, 502 NW2d 649, 658 n 24 [1993]; *Arbogast v Arbogast*, 174 W Va 498, 502, 327 SE2d 675, 679 [1984]).

continuing controversies over child custody," to "deter abductions and other unilateral removals of children" and to "facilitate the enforcement of custody decrees of other states" (Domestic Relations Law former § 75-b [d], [e], [g]). With similar goals in mind, and with the need for uniformity, Congress enacted PKPA (*see* Pub L 96-611, § 7 [c] [5]).

Notably, the Court of Appeals has held that where UCCJA and PKPA conflict, PKPA preempts UCCJA by virtue of the Supremacy Clause (*see Matter of Mott v Patricia Ann R.*, 91 NY2d 856, 859-860 [1997]; *see also Frankel v Siravo*, 278 AD2d 66, 67 [1st Dept 2000]; *Matter of Jackson-Ordia v Ordia*, 224 AD2d 529, 529 [2d Dept 1996]; *Matter of Hahn v Rychling*, 258 AD2d 832, 834 [3d Dept 1999], *lv dismissed* 93 NY2d 954 [1999]; *Matter of Reis v Zimmer*, 263 AD2d 136, 143-144 [4th Dept 1999], *supra*).[3] Given the similar goals of PKPA and FFCCSOA and unanimous findings that PKPA preempts inconsistent state law, we see no basis to reach a different conclusion on the issue of preemption with respect to FFCCSOA. Moreover, the Court of Appeals all but expressly answered the question of preemption in *Matter of Spencer v Spencer* (10 NY3d 60 [2008], *supra*). There, apparently foreseeing an issue regarding inconsistencies between FFCCSOA and UIFSA, the Court of Appeals noted that "[t]his is not a case where the two statutes conflict. Rather, the relevant provisions are consistent. Indeed, where UIFSA is silent, the FFCCSOA may help fill any gaps" (*id.* at 66). Moreover, in discussing whether a child support order made subsequent to an expired support order constituted a "modification," the Court stated that "a subsequent child support order is a 'modification' as defined by the federal statute. The FFCCSOA defines 'modification' of a child support order and, *under the Supremacy Clause of the United States Constitution, we are bound to follow that definition*" (*id.* at 67 [emphasis added]). Likewise in this case, FFCCSOA defines the jurisdictional requirements for this state's modification of a sister state's child support order and, to the extent that UIFSA is inconsistent with those requirements, we are compelled to follow those contained in FFCCSOA. For all of these reasons, we find that

**3.** Although New York replaced UCCJA with the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter UCCJEA) in 2002 (*see* L 2001, ch 386, § 1), UCCJEA is a revised version of UCCJA that seeks to conform to the provisions of PKPA (*see* Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-b, at 323), and it has been held that the jurisdictional provisions of PKPA preempt those of UCCJEA that are inconsistent (*see Stocker v Sheehan*, 13 AD3d 1, 10 [2004]).

the jurisdictional requirements of FFCCSOA preempt those of UIFSA.

■ Having found that the jurisdictional requirements of FFCCSOA preempt those of UIFSA, we now address the remaining requirement of FFCCSOA—whether personal jurisdiction may be maintained over respondent in New York. Due process permits a state court to exercise personal jurisdiction over a nondomiciliary so long as he or she has sufficient "minimum contacts" with the forum state such that the maintenance of the lawsuit "does not offend 'traditional notions of fair play and substantial justice' " (*International Shoe Co. v Washington*, 326 US 310, 316 [1945], quoting *Milliken v Meyer*, 311 US 457, 463 [1940]; *accord LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 216 [2000]). These minimum contacts must be the result of "some act by which the [nondomiciliary] purposefully avails [him]self [or herself] of the privilege of conducting activities within the forum [s]tate" (*Hanson v Denckla*, 357 US 235, 253 [1958]; *accord Kulko v Superior Court of Cal., City & County of San Francisco*, 436 US 84, 94 [1978]; *see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d at 216).

Here, respondent acquiesced in the child's relocation to New York, paid child support in this state and visited with the child in New York. While these acts, standing alone, are insufficient to confer personal jurisdiction over respondent (*see Kulko v Superior Court of Cal., City & County of San Francisco*, 436 US at 94-96; *Matter of Hauger v Hauger*, 275 AD2d 953, 953-954 [2000]; *Birdsall v Melita*, 260 AD2d 809, 810-811 [1999], *lv denied* 93 NY2d 812 [1999]), respondent also invoked the aid of the New York courts and protections of our state's laws by filing an action in New York to modify the Washington custody and visitation order, and thereafter benefitted from Family Court's order modifying visitation. "Use of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident" (*Matter of Sayeh R.*, 91 NY2d 306, 319 [1997] [citation omitted] [concluding that the respondent "deliberately and affirmatively sought the protection of this (s)tate's laws, and thereby rendered herself amenable to our general long-arm jurisdiction"]; *accord Andrew Greenberg, Inc. v Sirtech Can., Ltd.*, 79 AD3d 1419, 1423 [2010]; *Lynch v Austin*, 96 AD2d 196, 199 [1983]; *see Matter of Richardson v Richardson*, 80 AD3d 32, 35 [2010] [personal jurisdiction over the petitioner found where he affirmatively sought the entry of orders of protection against the respondents]). Furthermore,

under these circumstances, we find that the exercise of jurisdiction over respondent will not offend notions of fair play and substantial justice (see generally Burger King Corp. v Rudzewicz, 471 US 462, 477 [1985]; LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217). As such, we find that personal jurisdiction may be exercised over respondent in New York.

Therefore, inasmuch as none of the parties continues to reside in Washington, the Washington support order was registered in New York and New York may exercise personal jurisdiction over respondent, the jurisdictional requirements of FFCCSOA have been satisfied. Thus, Family Court possesses jurisdiction to modify the Washington child support order.

SPAIN, ROSE, LAHTINEN and McCARTHY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, motion denied, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.