RAY, J.
We have before us a petition for writ of prohibition to restrain a circuit court’s exercise of jurisdiction on a petition to modify a Michigan child support order, where Michigan no longer has continuing, exclusive jurisdiction over the order; the party seeking modification is a Florida resident; and the opposing party is a nonresident who objects to Florida’s assumption of jurisdiction. The father, Jyrki Tuono Juhani Pulkkinen, was the respondent below. He contends that the Uniform Interstate Family Support Act (“UIFSA”), chapter 88, Florida Statutes, excludes the instant case from the jurisdiction of Florida’s courts and binds the circuit court to dismiss the case. The mother, Karen Elaine Pulkkinen, was the petitioner below. She argues that Florida has jurisdiction under the federal Full Faith and Credit for Child Support Orders Act (“FFCCSOA”), 28 U.S.C. § 1738B, and therefore must entertain the modification action. We agree with the father. Section 88.6111(1), Florida Statutes (2010), which was enacted pursuant to a federal mandate, precludes jurisdiction over the modification proceeding in this case, and federal law does not conflict with this state law. Accordingly, we grant the petition.

FACTS AND PROCEDURAL HISTORY

The material facts are undisputed. In 2007, a Michigan court dissolved the parties’ marriage and ordered the father to pay the mother child support. In March 2010, after having moved to Florida with the parties’ two minor children, the mother petitioned the Florida circuit court to domesticate and modify the Michigan child support order. The father, who now lives in California, requested that the order be registered in Florida under the UIFSA, but only for enforcement purposes. Concerned that the order could not be modified if it were registered under the UIF-SA, the mother argued that the order should instead be domesticated under the United States Constitution’s Full Faith and Credit Clause and not with respect to any particular statute or constitutional provision. Ultimately, the court registered the order under the UIFSA, which is the applicable law.
Thereafter, the mother filed an Amended Supplemental Petition to Modify Final Judgment, and the father moved to dismiss the modification proceeding for lack of subject matter jurisdiction, while conceding that the court had personal jurisdiction over him. The father relied on the UIFSA, which grants jurisdiction to modify a foreign child support order only when the moving party is not a Florida resident, with certain exceptions not at issue in this case. § 88.6111(1). The mother argued that modification in Florida is proper because the FFCCSOA removes the continuing, exclusive jurisdiction of a state that has issued a child support order when neither the child nor any of the parties continue to reside in the issuing state, as is the case here. The circuit court agreed with the mother, concluding that the *741 FFCCSOA provides jurisdiction and preempts the UIFSA on this subject. The father requests a writ of prohibition to prevent the exercise of jurisdiction over this modification action.

LAW AND ANALYSIS

A. Standard of Review

A writ of prohibition is the proper vehicle for preventing a court from exercising jurisdiction it lacks or from exceeding its jurisdiction. Roberts v. Brown, 43 So.3d 673, 677-78 (Fla.2010) (quoting English v. McCrary, 348 So.2d 293, 296-97 (Fla.1977)). This Court has previously issued such a writ to preclude modification of another state’s child support order where a circuit court lacked jurisdiction to make the modification. State, Dep’t of Revenue v. Fleet, 679 So.2d 326, 329 (Fla. 1st DCA 1996).
To decide the question presented in this case, we must determine whether the UIFSA conflicts with the FFCCSOA concerning a state’s jurisdiction to modify a foreign child support order when the issuing state has lost continuing, exclusive jurisdiction; the petitioner is a resident of the state in which the action is brought; and the respondent is a nonresident who has not consented to the state’s exercise of jurisdiction over the proceeding. This issue implicates federal preemption doctrine and is a matter of first impression in Florida.[1] However, because all fifty states have enacted the UIFSA at Congress’ behest, Trissler v. Trissler, 987 So.2d 209, 210 n. 1 (Fla. 5th DCA 2008), state courts across the nation have encountered this issue. Those courts have reached divergent conclusions.[2] We review this issue of statutory construction, federal preemption, and subject matter jurisdiction de novo. State v. Rubio, 967 So.2d 768, 771 (Fla.2007) (statutory construction and constitutionality); State v. Harden, 938 So.2d 480, 485 (Fla.2006) (preemption); Dep’t of Revenue ex rel. Smith v. Selles, 47 So.3d 916, 918 (Fla. 1st DCA 2010) (subject matter jurisdiction).

B. Preemption Doctrine

Under federal preemption doctrine, which derives from the Supremacy Clause of the United States Constitution, a state law is void to the extent it conflicts with a *742 valid federal law. See Maryland v. Louisiana, 451 U.S. 725, 746-47, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); U.S. Const, art. VI, cl. 2. The United States Supreme Court has instructed that “the purpose of Congress is the ultimate touchstone in every preemption case.” Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).
Congress can manifest intent to preempt state law in three ways. First, Congress can overtly displace state authority with explicit preemption guidelines. English v. Gen. Elec. Co., 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Second, when no explicit guidelines exist, Congress can engage in implied field preemption. Id. Such preemption occurs where the federal regulatory scheme is “so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,” or because the federal interest in regulating the field is so dominant as to preclude the enforcement of state laws in the same field. See id. at 79, 110 S.Ct. 2270 (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Third, even in circumstances where a federal scheme does not occupy an entire regulatory field, Congress has the power to supersede state law that actually conflicts with federal law. Id.
The federal statute at issue in the instant case, the FFCCSOA, does not contain explicit preemption guidance, nor does it exhibit the preclusive effect of field preemption. Therefore, we must consider the third category of preemption: implied conflict preemption. Conflict preemption occurs when it is impossible to comply with both state and federal requirements or where state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” English, 496 U.S. at 79, 110 S.Ct. 2270 (citing Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)); Maryland, 451 U.S. at 747, 101 S.Ct. 2114.

C. Application of Preemption Doctrine to the FFCCSOA and the UIFSA

To apply these concepts, we begin with the plain language of the two acts, which is the best evidence of legislative intent. Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); Diamond Aircraft Indus., Inc. v. Horowitch, 107 So.3d 362, 367 (Fla.2013). To understand the meaning of any particular provision of either statute, we consider the provisions of the whole law and do not interpret words or sentences in isolation. United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984); Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1265 (Fla. 2008). If the language of a statute reveals an unambiguous meaning, we need not resort to any other sources to understand it. See Sebelius v. Cloer, — U.S. -, -, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); ContractPoint, 986 So.2d at 1265.
The FFCCSOA provides a framework for each state to give full faith and credit to child support orders issued by other states. Its first provision announces that each state “shall enforce according to its terms a child support order made consistently with this section by a court of another State.” § 1738B(a)(l). The FFCCSOA then provides plainly that states “shall not” modify other states’ child support orders “except in accordance with subsections (e), (f), and (i).” § 1738B(a)(2). These two provisions establish the general rule of the FFCCSOA as requiring en *743 forcement without modification of the child support orders of other states. Id.
The mother claims that the exception identified in subsection (e) applies to this case. The FFCCSOA’s subsection (e) permits a court of another state to modify a child support order only if:
(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
(2) (A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child’s State or the residence of any individual contestant; or
(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.
Under these provisions, in order for State B to modify a child support order issued by State A, State A must have lost continuing, exclusive jurisdiction of the child support order, either because the child and the parents are no longer residents of State A or the parents consent in writing to State B’s assumption of continuing, exclusive jurisdiction over the order. Additionally, State B must have jurisdiction to make such a child support order under subsection (i), which provides:
If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the non-movant for the purpose of modification.
§ 1738B(i) (emphasis added).
The UIFSA, as codified in Florida, contains similar provisions. Under the UIF-SA, even when a support order of another state is properly registered in Florida for enforcement,[3] a Florida court cannot modify a foreign support order issued under a law substantially similar to the UIFSA and involving a nonresident parent unless it finds after notice and a hearing that:
(a) The following requirements are met:
1. The child, the individual obligee, and the obligor do not reside in the issuing state;
2. A petitioner who is a nonresident of this state seeks modification; and
3. The respondent is subject to the personal jurisdiction of the tribunal of this state; or
(b) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing exclusive jurisdiction over the order....
§ 88.6111(1) (emphasis added). Here, neither the parents nor the children still live in Michigan, the trial court found that the father consented to personal jurisdiction, and the father has not filed a written consent to the circuit court’s jurisdiction to modify. Therefore, for the purposes of this case, the relevant distinction between the federal FFCCSOA and Florida’s UIF-SA is the nonresident requirement of section 88.6111(l)(a)2.
The mother contends that Florida must exercise jurisdiction despite the UIF-SA’s nonresident requirement because Michigan has lost continuing, exclusive jurisdiction under the terms of the FFCCSOA. Michigan’s loss of continuing, *744 exclusive jurisdiction, however, does not automatically confer jurisdiction on a Florida court to modify Michigan’s child support order. Bowman v. Bowman, 82 A.D.3d 144, 147, 917 N.Y.S.2d 379 (N.Y.App.Div.2011). Under the plain language of the FFCCSOA, modification may occur only “in a State with jurisdiction over the nonmovant for the purpose of modification.” § 1738B(i) (emphasis added).
Some courts have declined to apply the UIFSA’s nonresident requirement because they view it as a hurdle to modification not contemplated by the FFCCSOA. Those courts interpret section 1738B(i)’s jurisdictional language as requiring only that the modification court have personal jurisdiction over the nonmovant. See, e.g., Draper v. Burke, 450 Mass. 676, 881 N.E.2d 122, 128 (2008); Bowman, 82 A.D.3d at 148, 917 N.Y.S.2d 379. Other courts, which have found no conflict between the federal and state law, have interpreted this same language as conditioning modification upon finding both personal and subject matter jurisdiction. See, e.g., LeTellier v. LeTellier, 40 S.W.3d 490, 498-99 (Tenn.2001); Gentzel v. Williams, 25 Kan.App.2d 552, 965 P.2d 855, 860-61 (1998). We are persuaded by the latter interpretation.
To the extent there is any ambiguity in the language, we have resolved it by reference to the rule that a statute should not be construed so as to render any of its words meaningless. United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (noting that it is the court’s duty to give effect, if possible, to every clause and word of a statute); see also Gonzalez v. McNary, 980 F.2d 1418, 1420 (11th Cir.1993); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (“If possible, every word and every provision is to be given effect.... None should be ignored.”). In Draper v. Burke, the court reasoned that the language “over the non-movant” indicates personal jurisdiction to the exclusion of subject matter jurisdiction. 450 Mass. 676, 881 N.E.2d 122 at 128. If we were to construe the jurisdiction referenced in section 1738B(i) as solely pertaining to personal jurisdiction, we would render the phrase “for the purpose of modification” superfluous. Furthermore, we must acknowledge that if Congress had intended the language to characterize only personal jurisdiction, it could have used the words “personal jurisdiction,” just as it did in section 1738B(e), when listing the requirements an order must fulfill to be “made consistently with this section.” Thus, to give full effect to the plain meaning of subsection (i), we hold that the text “jurisdiction over the non-movant for the purpose of modification” properly refers to both personal jurisdiction and subject matter jurisdiction.
The federal FFCCSOA does not attempt to define the subject matter jurisdiction of state courts. Instead, that task is left to the states, which have embraced the UIFSA’s requirements governing when any court in a state may modify another state’s child support order. The UIFSA establishes those requirements as defining a jurisdictional concept by references to a state’s “jurisdiction to modify.”[4] See, e.g., §§ 88.6111(l)(b), 88.6131(1), 88.2051(2). Those requirements include the petitioner’s nonresidency as a distinct component from personal jurisdiction, and they are not procedural. § 88.611(l)(a). Therefore, they are best understood as limiting the subject matter jurisdiction of *745 all the courts in a particular state over proceedings to modify a foreign child support order. See Roberts v. Bedard, 357 S.W.3d 554, 559 (Ky.Ct.App.2011) (“Under Kentucky’s UIFSA statutes, the family court would only have had subject-matter jurisdiction if Roberts had been a nonresident of Kentucky when she filed her motion to modify.”). Because the federal law allows modification only when a state has both personal and subject matter jurisdiction, the latter of which is defined in the uniform state law, compliance with both federal and state law is not only possible, but required.
We also find nothing in a state’s limitations on its own modification jurisdiction through the UIFSA that stands as “an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” See English, 496 U.S. at 79, 110 S.Ct. 2270. In fact, a contrary holding would be difficult to justify because Congress essentially implemented both acts.
Congress enacted the FFCCSOA in 1994, Pub. L. No. 103-383, 108 Stat. 4063 (1994), and two years later passed the Personal Responsibility and Work Opportunity Reconciliation Act, which required all states to adopt the UIFSA in order to receive federal funding for aid to families with dependent children. Pub. L. No. 104-193, § 321,110 Stat. 2105 (1996) (codified at 42 U.S.C. § 666(f)). In conjunction with this mandate, Congress made “improvements” to section 1738B, including the addition of the language requiring that modification of a child support order occur “in a State with jurisdiction over the non-movant for the purpose of modification.” Pub. L. No. 104-193, § 322(13). Congressional reports contemporaneous with the 1996 revisions of the FFCCSOA explain that their purpose was to promote consistency with the UIFSA. See H.R. Conf. Rep. No. 104-725, at 351 (1996) (revisions to FFCCSOA proposed “to ensure that full faith and credit laws can be applied consistently with UIFSA”); H.R. Rep. 104-651, at 1413 (1996) (same); see also Basileh v. Alghusain, 912 N.E.2d 814, 819-20 (Ind. 2009); LeTellier, 40 S.W.3d at 497-98. Because Congress induced the states to adopt the UIFSA in an effort to create interstate consistency and simultaneously modified the FFCCSOA to comport with the UIFSA’s substance, the two acts are generally considered “complementary or duplicative and not contradictory.” State ex. rel. George v. Bray, 130 N.C.App. 552, 503 S.E.2d 686, 689 (1998); see also LeTellier, 40 S.W.3d at 496-98.
Indeed, our sister court has noted that the two acts are “virtually identical ... both in terms of structure and intent.” Trissler, 987 So.2d at 210. The express policy of the FFCCSOA is “to establish national standards under which the courts of the various States shall determine their jurisdiction to issue a child support order and the effect to be given by each State to child support orders issued by the courts of other States.” Pub. L. No. 103-383, § 2(b). The FFCCSOA identifies three specific purposes: to facilitate enforcement of support orders among the states, to discourage continuing interstate controversies over child support, and to avoid jurisdictional competition and conflict in the establishment of child support orders. Id. at § 2(c). The UIFSA accomplishes these same goals by providing uniform and consistent jurisdictional rules relating to the establishment, enforcement, and modification of child support orders by virtue of its adoption in all fifty states. See Nat’l Conference of Comm’rs on Uniform State Laws, Unif. Interstate Family Support Act (“UIFSA”), Prefatory Note (amended 1996). Both the UIFSA and the FFCCSOA “create a national regime in which only a single support order is effective at any given time.” Hamilton v. Hamilton, 914 N.E.2d 747, 751 (Ind.2009); *746 see UIFSA Prefatory Note (amended 1996); Pnb.L. No. 103-383, § 2(b).
The UIFSA’s nonresident provision does not run afoul of the FFCCSOA’s goals. It minimizes jurisdictional competition and interstate controversies by restricting the circumstances under which a state can modify another state’s order. Further, it promotes certainty concerning the proper venue for a modification action by limiting the moving party’s venue choices. Finally, by restraining the exercise of jurisdiction, it promotes the goal embodied in the FFCCSOA’s title, to preserve the full faith and credit to which each state order is entitled.
Before concluding, we pause to note that binding precedent recognizes a presumption against preemption, particularly in areas that have traditionally been regulated by the states. E.g., Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) (quoting Lohr, 518 U.S. at 485, 116 S.Ct. 2240); W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 16 (Fla.2012). Family law is such an area. See Rose v. Rose, 481 U.S. 619, 628, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987) (recognizing the state courts’ “traditional authority ... over the issue of child support”); Ex Parte Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) (“The whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not the laws of the United States.”). Recent Supreme Court case law, however, suggests a shift away from the presumption. See, e.g., Mut. Pharm. Co., Inc. v. Bartlett, — U.S. -, 133 S.Ct. 2466, 186 L.Ed.2d 607 (2013) (omitting discussion of the presumption in the majority opinion and stating that, without an explicit expression of congressional intent to preempt or not preempt, courts are “left to divine Congress’ will from the duties the statute imposes”); PLIVA, Inc. v. Mensing, — U.S. -, -, 131 S.Ct. 2567, 2580, 180 L.Ed.2d 580 (2011) (plurality opinion) (suggesting “that courts should not strain to find ways to reconcile federal law with seemingly conflicting state law”). Whatever the continuing vitality of the presumption doctrine may be, it does not affect our decision today, because we readily conclude from the language used in the two statutes that there is no conflict, express or implied. Consequently, we need not invoke the presumption to tip the scales.

CONCLUSION

In conclusion, having thoroughly considered the text of the two acts, we hold that the FFCCSOA does not preempt section 88.6111(1) of the Florida UIFSA. Neither the language nor the purposes of either statute create any conflict that requires displacing state provisions. Therefore, the circuit court is required to give full effect to section 88.6111(1) and refrain from exercising modification jurisdiction in this matter.
PETITION GRANTED.
LEWIS, C.J., and CLARK, J„ concur.

. Although Florida courts have recognized the general proposition that the FFCCSOA supersedes any conflicting provision of the UIFSA, none have addressed whether the jurisdictional provisions of the two laws conflict, and none have found preemption on the matters they considered. See Trissler v. Trissler, 987 So.2d 209, 212 (Fla. 5th DCA 2008) (applying section 88.6111(1) to require a circuit court to exercise jurisdiction where the petitioner was not a Florida resident); Bouquety v. Bouquety, 933 So.2d 610, 611 n. 2 (Fla. 3d DCA 2006) (citing cases addressing a predecessor uniform act for the proposition that the UIFSA has been preempted "with respect to modifications of child support orders rendered by another state,” while acknowledging that the FFCCSOA was not at issue because the case concerned an order issued in another country); Kramer v. Kramer, 698 So.2d 894, 894 (Fla. 4th DCA 1997) (applying the FFCCSOA to a different issue under the theory that it preempts state law, without describing the nature of any conflict).

. See, e.g., Draper v. Burke, 450 Mass. 676, 881 N.E.2d 122, 127-29 (2008) (concluding that the FFCCSOA preempts the UIFSA’s provision precluding jurisdiction to modify another state’s order where the movant is a resident of the state in which modification is sought); Bowman v. Bowman, 82 A.D.3d 144, 148-49, 917 N.Y.S.2d 379 (N.Y.App.Div.2011) (same); contra, e.g., LeTellier v. LeTellier, 40 S.W.3d 490, 498-99 (Tenn.2001) (holding that the FFCCSOA does not preempt the UIFSA’s provisions concerning lack of jurisdiction to modify where the nonmovant is a nonresident of the state where modification is sought); Gentzel v. Williams, 25 Kan.App.2d 552, 965 P.2d 855, 859-61 (1998) (same); Jackson v. Holiness, 961 N.E.2d 48, 51-52 (Ind.Ct.App. 2012) (same).

. See §§ 88.6011-.6071, Fla. Stat. (2010).

. In the prefatory note and comments to the UIFSA, the National Conference of Commissioners on Uniform State Laws refers to these requirements as defining a state's "modification jurisdiction.”